GIANT POWDER CO. v. CALIFORNIA VIGORIT POWDER CO. and others.*

(*Circuit Court, D. California.*  November 26, 1880.)

1. EQUITY PRACTICE—REHEARING.—An application for a rehearing in court of original jurisdiction, after entry of a final decree, is not an *ex parte* proceeding.

2. SAME—SAME.—If the petition for such rehearing be filed during the term, the court will retain jurisdiction over the case, and may subsequently decide upon the application

3. SAME—SAME.—A case was heard by a justice of the supreme court, whilst holding the circuit court for the district of California, in the city of San Francisco, and a decree was entered dismissing the complainant's bill. *Held*, that complainant's petition for a rehearing could not thereafter be heard *ex parte* before the justice at Washington.

4. SAME—SAME.—*Held, further*, that the proper course of procedure for the complainant, in such case, was to file its petition with the clerk of the circuit court at San Francisco, and obtain from the court or circuit judge an order upon the defendants to show cause on the following rule day, or some other day mentioned, why its prayer should not be granted; whereupon the defendants could answer the petition, and upon such petition and answer the application for the rehearing could be heard.

5. SAME—SAME.—*Held, further*, that as the circuit court in San Francisco would be held by the circuit judge, in the absence of the justice who heard the cause, that the latter would direct the clerk of the court to forward the petition and answer to him at Washington, accompanied with such briefs as counsel might file within a reasonable time to be allowed by the court; and that the application would then be taken up and disposed of, and the judgment of the justice sent to the circuit court and there entered.—[ED.

In Equity.  Petition for rehearing.

FIELD, C. J.  This case was heard by me whilst holding the circuit court in San Francisco, in the month of September last, and was decided on the twelfth of October following.  The decision was against the complainant, and a decree was entered dismissing the bill.  The complainant's counsel now present to me at Washington a petition for a rehearing.

*See *Giant Powder Co.* v. *California Vigorit Powder Co.* 4 FED. REP. 720.

The case was elaborately argued at the circuit, counsel occupying several days in the presentation of their views. Their arguments were taken down by a short-hand writer, and printed, thus enabling me to read what I had patiently listened to in the oral discussion.

The question before the court was the validity of the re-issued patent to the complainant. The main objection urged to its validity was that it was for a different invention from that described in the original patent. And upon that point the argument was full, elaborate, and able. It is difficult to see how the position of the complainant in support of the patent could have been more cogently presented.

The original patent was for a compound of nitro-glycerine, with an inexplosive porous absorbent, which would take up the nitro-glycerine, and render it safe for transportation, storage, and use, without loss of its explosive power. The re-issued patent is for a compound of nitro-glycerine with any porous absorbent, explosive or inexplosive, which will be equally safe for transportation, storage, and use, without loss of explosive power. In other words, the re-issued patent drops the limitation of the original, and seeks to cover all compounds in which nitro-glycerine is used, in connection with a porous absorbent, in the production of blasting powder, thus practically securing to the patentee a monopoly of nitro-glycerine in the manufacture of that powder. The court held that the re-issued patent was, therefore, more extensive in its scope than the original patent, and on that ground was invalid. It covered a different invention.

The court also held that the original patent was neither invalid nor inoperative from any defective specification, but was valid and operative for the invention described; and that this appeared upon a comparison of the two patents, the re-issued patent differing from the original only in the extent of its claim; and that, therefore, the commissioner exceeded his jurisdiction in granting a re-issue at all, as well as on the ground that the re-issued patent was for a different invention. This latter position was not, it is true, discussed in the oral argument, but it is raised by the pleadings, and

the attention of complainant's counsel at San Francisco was called to it, and a note of authorities on the point was received from him, embracing the greater part of those mentioned in the petition for rehearing. Whether the position be well taken or not cannot affect the decision of the case, if the re-issued patent cover a different invention from that described in the original patent.

But the petition cannot now be considered by me at Washington. It is not an *ex parte* proceeding; it can only be presented on notice, and can only be considered after the other side has had an opportunity to answer it. The *ex parte* presentation by counsel has evidently been made from a failure to distinguish between an application for rehearing after the decision of an appellate tribunal, and an application for a rehearing in a court of original jurisdiction after entry of a final decree. The distinction between applications for rehearing in the two cases is pointed out by Chief Justice Taney, in *Brown* v. *Aspden*, 14 Howard, 26: "By the established rules of chancery practice," said the chief justice, "a rehearing, in the same sense in which that term is used in proceedings in equity, cannot be allowed after the decree is enrolled. If the party desires it, it must be applied for before the enrollment. But no appeal will lie to the proper appellate tribunal until after it is enrolled, either actually or by construction of law; and, consequently, the time for a rehearing must have gone by before an appeal could be taken. In the house of lords in England, to which the appeal lies from the court of chancery, a rehearing is altogether unknown. A reargument, indeed, may be ordered, if the house desires it for its own satisfaction. But the chancery rules in relation to rehearings, in the technical sense of the word, are altogether inapplicable to the proceedings on the appeal.

"Undoubtedly, this court may and would call for a reargument where doubts are entertained, which it is supposed may be removed by further discussion at the bar. And this may be done after judgment is entered, provided the order for reargument is entered at the same term. But the rule of the court is this—that no reargument will be heard in any case

after judgment is entered, unless some member of the court who concurred in the judgment afterwards doubts the correctness of his opinion, and desires a further argument on the subject. And, when that happens, the court will, of its own accord, apprise the counsel of its wishes, and designate the points on which it desires to hear them."

According to the practice in the supreme court, if the court does not, of its own motion, desire a rehearing of a case decided, counsel are at liberty to submit without argument a brief petition or suggestion of the points upon which a rehearing is desired. If, then, any judge who concurred in the decision thinks proper to move for a rehearing, the motion is considered by the court; otherwise, the petition is denied, of course. *Public Schools* v. *Wallace*, 9 Wall. 604.

A similar course of procedure would be appropriate in any appellate tribunal. To allow an argument upon such a petition would lead, in a majority of cases, to a mere repetition, with more or less fullness, of the points presented on the original hearing, and cause infinite delays to the prejudice of other suitors before the court.

There is another observation to be made upon rehearings in equity after a final decree in courts of original jurisdiction. The practice in this country and that which formerly prevailed in England are essentially different. According to the practice in the English courts, a rehearing previous to the enrollment of the decree, when the petition was approved by the certificate of two counsel, was granted almost as a matter of course. Repeated rehearings in the same cause were not uncommon, and the consequent delays and expenses from this practice were so great as to lead to the interposition of parliment for its correction. This subject is mentioned by Chief Justice Taney in his opinion in the case in Howard. There, when a case was decided, memoranda for the decree were entered in the minutes of the court; in some instances the final decree was thus entered; but the decree was not considered as strictly a record until it was engrossed, signed, and entered at length in the rolls of the court. Between the time of the decision and the entery of memoranda for the decree,

and the time the decree took a definitive shape by enrollment, it was open to modification and correction, and even to entire change. But when once enrolled the decree was not subject to change except in the house of lords, or by a bill of review. 2 Daniell's Chancery Practice, 1018.

In this country there is not, except, perhaps, in one or two states where the old forms of equity practice are retained, any such proceeding as the formal enrollment of decrees. Here, when a case in equity is decided, a decree is drawn up and signed by the judge, and entered on the records of the court, with about the same formality as a judgment in a case at law. And rehearings are then granted, except when the judge acts of his own motion, only upon such grounds as would authorize a new trial in an action in law; that is, for newly-discovered evidence or errors of law apparent upon the record. All the limitations which control courts in actions at law, in considering allegations of newly-discovered evidence and of errors at law, apply to applications for rehearing in such cases. *Bentley* v. *Phelps,* 3 W. & M. 403. See, also, *Doggett* v. *Emerson,* 1 W. & M. 1; *Emerson* v. *Daniels,* Id. 21; *Tufts* v. *Tufts,* 3 W. & M. 426; and also *Clapp* v. *Thaxter,* 7 Gray, 386.

The course of procedure for the complainant, therefore, is to file its petition with the clerk of the circuit court at San Francisco, and obtain from the court or circuit judge an order upon the defendants to show cause on the following rule day, or some other day mentioned, why its prayer should not be granted. The defendants can then answer the petition, and upon the petition and answer the application can be heard. A rehearing should not be granted for newly-discovered evidence where the evidence could have been obtained by reasonable diligence on the first hearing, nor when it is merely cumulative to that previously received, nor when, if presented, it would not have changed the result. And as to errors of law, they should be such as are clearly shown by considerations not previously presented. A new hearing should not be had simply to allow a rehash of old arguments. The proper remedy for errors of the court on points argued in the first

hearing is to be sought by appeal, when the decree is one which can reviewed by an appellate tribunal. See *Tufts* v. *Tufts, supra.*

The petition, therefore, cannot be heard by me *ex parte* at Washington. The complainant must pursue the regular course of procedure, and give notice to the opposite party. If the petition be filed during the term, the court will retain jurisdiction over the case, and may subsequently decide upon the application. The eighty-eighth rule in equity applies only where no petition is presented during the term.

As the circuit court in San Francisco will be held by the circuit judge in my absence, he will direct its clerk to forward the petition and answer to me, at Washington, accompanied with such briefs as counsel may file within a reasonable time to be allowed by the court. The application will then be taken up and disposed of, and my judgment sent to the circuit court and there entered. Where cases have been heard by the circuit judge sitting alone, I do not myself hear applications in them for a rehearing, or motions for a new trial, except by his request. This consideration to the different judges composing the court is essential to the harmonious administration of justice therein. As observed by me in a case reported in 1 Sawyer: "The circuit judge possesses equal authority with myself on the circuit, and it would lead to unseemly conflicts if the rulings of one judge, upon a question of law, should be disregarded, or be open to review by the other judge in the same case." Page 689.

The petition contains what purports to be a copy of my opinion, but it is a copy of the opinion before it was revised. The opinion should not have been published until it had received my revision, as counsel very well know. In any petition hereafter filed it is expected that a correct copy will appear, if any one is given. If the present petition is used, the opinion must be corrected in accordance with the revised copy.

Before concluding, it may not be amiss to invite the attention of complainant's counsel to the language of Judge Story, in the case of *Jenkins* v. *Eldridge,* with respect to the earnest-

ness with which counsel, in applying for rehearings, sometimes asseverate their convictions of the errors of the court; and, to repeat what is there said, "that if any judge should be so unstable in his views, or so feeble in his judgment, as to yield to them, he would not only surrender his independence, but betray his duty. However humble may be his own talents, he is compelled to treat every opinion of counsel, however exalted, which is not founded in the law and the facts of the case, to be voiceless and valueless." 3 Story, 303. Nothing can be gained by the strong language expressed by counsel in presenting the petition as to the supposed errors of the court, nor by the statement as to what may have been said of the decision by other counsel, who have neither examined, studied, nor understood the case.