# EUGENIA TEILLARD ET AL., Complainants,

## v.

# ENRIQUE GREEN, Dft.

---

San Juan, Equity, No. 916.

### PRESCRIPTION AND GOOD FAITH.

Opinion—Power of Court.

1. Under Spanish practice an opinion and a judgment are combined in one paper, but this is not the American practice. While the judgment cannot be changed, the opinion is subject to correction by the judge making it until formally published.

Cotenants—Presumption.

2. Under the civil law, as under the common law, cotenants are presumed to hold in harmony with each other's title, and it will take a stronger case of dispossession against a cotenant than against third parties.

Prescription—Tacking.

3. Possessions of different possessors may be tacked for the pur-

poses of prescription. If the thirty-year period as to the possession of land is not applicable, the case must be decided under the terms of the ten-year period, as modified by military order in this case to six years.

Good Faith—Definition.

4. Good faith consists in one's belief that the person from whom one has received the thing was the owner of the same, and could convey his title.

Fraud—Relationship.

5. Transactions between relatives are scrutinized more critically than those between people having no such connection, but there is not any inference of fraud from the mere fact that the parties are relatives. Good faith is always presumed. Civil Code, § 437.

*Justo Titulo*—Definition.

6. The *justo titulo*, just title, required by the law of prescription, is not presumed, but must be proved. Civil Code, § 1855. It is of the nature of color of title, and is satisfied when an instrument is in proper form, although the title itself may not be good.

Inscription—Registration.

7. Inscription of real rights to immovables in the registry of property is necessary in order to affect third parties. Civil Code, § 613. But instruments which are null by law are not validated by registration. Mortgage law, article 33.

Prescription—Ordinary, Extraordinary.

8. The distinction between ordinary and extraordinary prescriptions is substantially common to all civil-law countries, including Louisiana and France, and their practical equivalent is found in the Roman law. The requisites for ordinary prescription are good faith, just title, and continuous possession under a valid contract. Extraordinary prescription relates to possession alone.

Expediente Posesorio—Not Title.

9. An expediente posesorio does not amount to a just title, for it is not *per se* a judicial determination of title. It is rather a basis of a future *dominio* proceeding which does declare title.

Residents—Nonresidents.

10. Nonresidents suing each other cannot always set up the same questions of limitation that are permitted to residents.

Bona Fide Purchaser—Not Known to Civil Law.

11. The defense of bona fide purchase without notice is not known

to the civil law where all questions are decided under the mortgage
law. It is peculiar to equity, but runs along much the same lines
as the civil law.

Evidence—Original Bill—Bill of Review.

12. The complainant not having made out her case on the evidence
under the law as construed by the court, and nothing material that is
new being shown under the bill of review, the bill of review must be
denied.

Opinion filed November 23, 1914.

———

*Mr. F. H. Dexter* for complainants.

*Messrs. José A. Diego* and *Martin Travieso* for defendant.
On Bill of Review *Mr. Frank Martinez* replaced *Mr. Travieso.*

HAMILTON, Judge, delivered the following opinion:

The original bill in this cause was filed October 14, 1912.
The cause came before the court upon demurrer to the bill and
an opinion was filed October 31, 1913, fully covering the law
points involved in the case. Thereupon testimony was taken,
the case submitted on July 23, 1914, and a decree rendered
dismissing the bill. An opinion was filed at the same time.
The defendant at this October term sought a review of the
decree, first by a motion, and afterwards by filing a bill of
review on October 10.

1. The bill of review is necessarily for a review of the decree
of the court, and not of its opinion, and in order not to have two
opinions covering substantially the same points, the court has
withdrawn that of July 23, 1914, and now files the following

as covering more fully all the points of the original bill and of the bill of review:

In the Spanish courts decisions are recited in a number of paragraphs each beginning "Resultando," and the decision of the court follows in a number of paragraphs each beginning "Considerando," with the result that the judgment and the opinion make up one paper. This was not only true in Porto Rico, but is found existing even now in the reports of the supreme court of Spain, otherwise known as the Jurisprudencia Civil. There is in the American and English courts, however, as pointed out by Mr. Justice Field (then of the California supreme court and afterwards of the United States Supreme Court), a wide difference between the decision of a court and its opinion. A decision is a judgment binding the parties to the case; the opinion is merely the reasons given by the court for that judgment. The decision or judgment is necessarily in writing and cannot be changed even by the court, except upon proper application; the opinion may be oral or written, and is subject to revision, correction, or modification in any particular deemed advisable until, with the approbation of the writer, it is transcribed in the records or formally published. Every judge has the right without question to revise and modify his opinions. Houston v. Williams, 13 Cal. 24, 27, 73 Am. Dec. 565. The enrolment of the judgment is a practice almost as old as courts themselves, while rendering opinions is of modern growth. They were not common in the time of Lord Coke. 3 Coke, Pref. 5.

An opinion is often merely an indication of what the decree should be, a kind of direction to the attorney or clerk how to draw a judgment, and, in a sense, is the property of the judge.

9 Am. & Eng. Enc. Law, 2d ed. p. 2; 29 Cyc. 1499. The judge has the right to withdraw an opinion for revision, certainly during the pendency of a case, including an application for a rehearing in any form. The following opinion is now filed as that of the court on the decree of July 23, and on the decree November 23, 1914. See License Cases, 5 How. 573, 12 L. ed. 287 (Taney); Giant Powder Co. v. California Vigorit Powder Co. 6 Sawy. 508, 5 Fed. 202 (Field).

2. The allegation of the complaint, and it is sustained by the evidence, is that one Ursula Dukey, wife of Pablo Teillard, died in 1856, leaving three Teillard children, Eugenia, Amando, and Arturo, and a will in which she made them her sole heirs. Her estate was made up largely of an undivided interest in the hacienda "Santisima Trinided," which she had inherited from her father, Antonio Dukey. Under the law this was the wife's separate estate. On May 22, 1857, Pablo Teillard instituted in the court of first instance at Mayaguez proceedings to determine and liquidate whatever property belonged to the conjugal society or partnership. Inventory was made and judgment rendered showing that there was no ganancial or marital property, and that therefore all the property of the decedent belonged to the three children. After several years Pablo Teillard, in 1872, undertook further proceedings in the same court seeking the sale of the property of these minors. This application failed for technical reasons. Prior to this, Pablo had taken his minor children, Eugenia and Amando, to France, and Arturo, who became of age December 8, 1872, remained in Porto Rico and acted as the representative of the family.

The foundation of the original bill is the allegation of fraud by Arturo, brother of complainant Eugenia, affecting the de-

fendant. The defendant, Enrique Green, acquired possession by purchase from Ciriaca Cristi by deed in the usual form December 26, 1911. Ciriaca Cristi inscribed her deed from Alfredo Cristi on October 9, 1908, and he inscribed his deed from Pablo Teillard July 14, 1894. Teillard acquired his right to convey, whatever it was, under the expediente posesorio of June 13, 1894.

The origin of the title, therefore, was an estate held by father and children. The rule is general that cotenants are presumed to hold in harmony with each other, and that it will take a stronger case of dispossession to be effective against a cotenant than against third parties. A similar principle is found in the Civil Code, § 1866: "Among coheirs, co-owners, or proprietors of adjacent estates, the action to demand the division of the inheritance, of the thing held in common, or the survey of the adjacent properties, does not prescribe." This, however, is not a suit for the division of the inheritance, survey, or anything similar. It is not brought against a coheir or co-owner. The defendant in this case is a stranger, Enrique Green. There is therefore no case for the nonrunning of the statute of prescription. There was, however, a question as to which prescription does run in this case,—the common prescription of ten years (modified to six years by the military order of April 4, 1899), or the extraordinary prescription of thirty years. This depends not upon co-ownership at all, but upon other facts arising between independent parties.

3. The question raised on demurrer related to the military order, which was held not to be retroactive. Some of the same principles arise upon the merits. The military order purported to change the time of the civil rule, but still required the three

elements of time, good faith, and title. The same are involved
in the statute of prescription, which will determine this case
one way or the other. Of these, there is no question of the lapse
of time. The inscription of sale of Pablo Teillard to Alfredo
Cristi was July 14, 1894, and, if the statute of six years applies,
time enough has run. On the other hand, if the statute of thirty
years applies, time has not run. There is no question that the
successive possessions, if continuous, may be added together, or,
to use the common-law expression, may be tacked. Section
1861 of the Civil Code provides that "in the computation of the
time necessary for prescription, the following rules shall be ob-
served: 1. The actual possessor may complete the time neces-
sary for prescription by adding to his time that of his con-
stituent. 2. It is presumed that the actual possessor, who may
have been a possessor at a former period, has continued to be
such possessor during the time intervening, unless there is
proof to the contrary." The case, therefore, is dependent upon
elements which determine which prescriptive period shall con-
trol. If there is possession with good title and good faith, the
limitation is ten–twenty years, modified by military order to
six years. In other cases it is thirty years. Civil Code, § 1858,
provides: "Ownership and other property rights in real prop-
erty shall prescribe by possession for ten years as to persons
present, and for twenty years with regard to those absent, with
good faith and with a proper title." On the other hand, in §
1860, it is provided that "ownership and other property rights
in real property shall also prescribe by uninterrupted possession
of the same for thirty years without the necessity of title nor
good faith and without distinction between present and absent
persons." It follows, therefore, that, thirty years not having

elapsed since the first link of the chain under which defendant. claims, he will be protected by the existence of good faith and a. proper title for six years.

4. Does the evidence in the case justify the presumption of good faith on the part of the defendant?

Several provisions in the Civil Code throwing light upon the subject may be cited:

"Sec. 1841. For ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law."

"Sec. 1842. Possession must be in the capacity of an owner, public, peaceful, and uninterrupted."

"Sec. 1843. Acts of a possessory character, performed by virtue of a license, or by mere tolerance on the part of the owner, are of no effect for establishing possession."

"Sec. 1844. For the effects of prescription, possession is interrupted either naturally or civilly."

"Sec. 1845. Possession is interrupted naturally, when, for any cause whatsoever, it ceases for more than one year."

"Sec. 1846. Civil interruption is caused by a judicial citation of the possessor, even should it be by order of a court or of a judge without jurisdiction."

Good faith of the possessor is defined in the Code (§ 1851) as consisting in one's "belief that the person from whom he received. the thing was the owner of the same, and could convey his title."

It is alleged in the complaint that the defendant, Green, had actual knowledge of the title of the complainant and constructive evidence from the registrar of property. It was shown that the defendant, before buying the property, had the regis-

try examined, but the transcript file shows that there is nothing which could throw any doubt upon the good faith of defendant, Green. Witness Diego, his attorney, says it appears of record in the registry of property that there was an interest in the property in favor of the complainant. This appears in the expediente posesorio, and there is no reason to suppose that the witness was speaking of any other than the fractional interest never disputed to belong to the complainant. The fact of defendant's consulting an attorney in the matter tends to show his good faith. Nor is any evidence introduced to question the good faith of his predecessors in the title, at least so far as relates to Ciriaca and Alfredo Cristi.

5. The main reliance of the complainant is upon the fact that down to the sale to defendant, Green, which was less than a year before the filing of the bill, the transactions were between relatives by blood or marriage. The inference is drawn that each not only knew of the supposed fraud which the other was trying to commit, but participated in it. It is very true that transactions between relatives are scrutinized more critically than transactions between people having no connection with each other. On the other hand, it is to be remembered that, especially as to family property, nothing is more natural than transactions between relatives. They are disposed to help each other, and from their knowledge of the property are able to judge not only of its abstract value, but, under the Spanish custom of keeping property in the family, of judging as to its value to the family as such. It cannot be said that there is or should be any inference of fraud because the parties are relatives, although, of course, this may develop from other facts in the case. This is the more true in the case at bar, because if relationship gives

Teillard v. Green.

ground for inference of partiality, the complainant is herself one of these relatives, and there could be no presumption that her relatives would defraud her. Relatives constitute no exception to the provisions of article 437 of the Civil Code "that good faith is always presumed, and any person averring bad faith on the part of the possessor is bound to prove the same." The good faith necessary exists in this case.

6. The question of proper title, *justo titulo,* requires more detailed consideration. It is not presumed like good faith. Civil Code, § 1855. The statute is not to be construed as calling for a perfect title. If this were so, there would be no need of any further provision. There would be no need of any statute of prescription of limitation. The Civil Code in this goes upon the same principle as the common law when the latter demands color of title. Color of title at the common law has been more broadly construed, however, and will embrace any paper, even if not strictly a conveyance, which defines boundaries. The civil law does not go so far. The *justo titulo* calls for and demands a deed apparently in proper form. As far back as the Siete Partidas, promulgated by Alfonso the Wise, we find the following: " . . . If one man receives from another man anything in good faith thereof, which cannot be removed, as well as by purchase, or donation, exchange, bequest or through any other lawful motive, if he should hold the same for ten years, living on the land the master thereof, or living anywhere else, he may gain the same by the lapse of said time; even though the person from whom he received it be not its true owner, and from that time on he is not bound to answer for it to anyone; even though one should say that he wanted to prove that he was its true owner, and that he had no knowledge that

VII. Porto Rico—22.

Teillard v. Green.

another one was gaining it through time." Law XVIII.—Title XXIX.—Partida Tercera.

The Civil Code of Porto Rico in § 1853 defines as follows: "By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question." This is construed by Galindo and Escosura in their Commentaries on the Mortgage Law. They say: "The sale, exchange, donation, dower, inheritance, and bequest constitute adequate titles under the law for the transfer of dominion, and as such are susceptible of causing prescription; while lease, contract of loan, and restitution, mortgage, not entailing the transfer of dominion, do not serve for prescription." 2 Commentaries on Mortgage Law, p. 524.

Manresa comments at length on article 1952 of the Spanish Civil Code, which is the original of § 1853 of the Porto Rico Civil Code:

"In order that common prescription should lie it is necessary that the possessor contemplating the prescription do so by virtue of a legal cause acquisitive of dominion, and such legal cause, which constituted the 'Razon derecha,' straight motive, referred to in the law of the 'Siete Partidas,' embraces what is characterized as *justo titulo,* just title. This is therefore the juridical cause of the acquisition of dominion through possession for this class of prescription, and of such nature are those rightfully arising from the transfer of the dominion. It has been so held by the Supreme Court in various decisions rendered before and after the publication of the Civil Code, wherein the doctrine was sustained that, a transferable title of dominion being one by virtue of which the properties are possessed, it is sufficient cause for their prescription."

Teillard v. Green.

"The definition of *justo titulo* given by the Code in article 1952, under the terms hereinabove set forth, fully explains the legal meaning of this essential requisite for the common acquisitive prescription."

"We have stated in another place, that, although it is necessary that the title on which the prescription is based be of the kind which transfer the dominion, this being the circumstance which qualifies it as just, it is not, however, likewise necessary that it had produced by itself said transfer. And it can be understood why that condition is not necessary, for if it should be otherwise indispensable in order to qualify the justness of the title, that the dominion had already been transferred or the right object of the prescription, the latter would be then unnecessary, because without its mediation there would have been accomplished the legal effect sought for."

"As mere good judgment will suggest, that is not the spirit of the said article 1952. Through it, it has been meant to say, and it says, that a just title is that which is legally sufficient to transfer the dominion or the right aimed to be gained by prescription; but it is not required as a condition necessary therefor that the transfer of said dominion or right had already been carried out or perfected. On the contrary, such title as would be capable of producing that legal result, without having attained it yet, is the one necessary for basing prescription, and that is the construction which should be given to said article."

"Finally, article 1952 of the Code defines the title just as it should be so as to produce a transfer of dominion. But as, in spite of the existence of that title, just, truthful, and valid, the transfer may not be carried out, hence its validity for acquiring common prescription although said transfer does not take place."

### Teillard v. Green.

"A person holds a right upon a certain thing; that right involves the power to transfer that thing to another person. The act through which said right is transferred to another person is what constitutes the title. Disregarding these two ideas, and separating the former, it cannot be gainsaid that the latter may exist by itself, and therefore independent of the other. The right did not really exist in the person making the transfer, consequently the transfer does not take place, because no one can give what he has not; but there might exist the juridical act such as would produce the transfer of the right if such right should dwell in the grantor, and that is the title as defined in article 1953."

An apt expression of the principle is found in the Civil Code of Louisiana.

"Art. 3450. By the term 'just title,' in cases of prescription, we do not understand that which the possessor may have derived from the real owner, for then no prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the property."

There is no question that the deeds in evidence are in proper form, and to that extent constitute the necessary *justo titulo*.

7. There is also the question of inscription. According to article 613 of the Civil Code, "the titles of ownership or of other real rights relating to immovables which are not properly inscribed or annotated in the registry of property shall not be prejudicial to third persons." Article 27 of the mortgage law provides that, "for the purposes of this law, a third person shall be considered one who has not been a party to the record instrument or contract." The complainant, therefore, was a

Teillard v. Green.

third person so far as relates to these deeds, and there must therefore be the further proof that they were properly inscribed. It is true that in article 33 of the mortgage law, "instruments or contracts which are null under the law are not validated by their admission to record." In the case at bar, however, these different deeds, as seen above, are correct in form, and the facts seem to show that the deeds in question were properly inscribed.

8. This case must be distinguished from that of Ochoa v. Hernandez y Morales, 230 U. S. 139, 57 L. ed. 1427, 33 Sup. Ct. Rep. 1033. There Morales, fraudulently representing himself to be the owner, appeared before the municipal court and obtained an expediente posesorio, which was duly recorded, and afterwards a decree was entered converting his possessory title into a record of ownership, *titulo de dominio*. Ochoa contracted with Morales upon the strength of his apparent title. The possession thus acquired by Morales being fraudulent, there was an absence of good faith, and so the title could not ripen into a good title by any other prescription than that of thirty years. The case at bar, however, is not one between a fraudulent claimant and a purchaser from him not in good faith.

In some elements it is more akin to Hayes v. United States, 170 U. S. 637–649, 42 L. ed. 1174–1179, 18 Sup. Ct. Rep. 735.

"By the Spanish law prescription was divided into ordinary and extraordinary. The term of the ordinary prescription as to immovable property was ten years (Partidas 3, Law 18, title 29), and the term for immovable property by the extraordinary prescription was thirty years (Partidas 3, Law 16, title 29). But the requisites for the ordinary prescription were,

1st, good faith; 2d, just title; 3d, continued and uninterrupted possession for the time required by law. (Hall, p. 30; 2 White, 83; Orozoco, Legislation and Jurisprudence on Public Lands, Mexico, 1895, vol. 1, p. 300.) The just title required did not include a title which was absolutely void and derived from one who by operation of law had no power whatever to dispose of the property. (Partidas 3, Law 11, title 20.) In speaking on these provisions of the Partidas, Schmidt, in his Civil Law of Spain and Mexico (p. 290), says: It is also necessary that the contract by which the property was acquired should be a valid contract. Hence, a thing acquired by purchase, donation or any other contract made with an insane person cannot be acquired by prescription; nor property obtained from a minor or any other mode which the law holds invalid; but even in such cases the prescription of thirty years applies, as is explained in paragraph 1 of the next section.

"The provisions in the Partidas as to the distinction between the ordinary and the extraordinary prescription and the requirements essential to the former were substantially common to the civil-law countries. Their practical equivalent was found in the Roman law. L. 24, C. de rei Vindicat., L. 4, C. de præscript Longi temp. They obtained in the intermediary law. They were reproduced in the Code Napoleon, art. 2265. They were also adopted in the Louisiana Code, La. Civ. Code, arts. 3478 et seq. to 3484."

9. The right of Pablo Teillard under which he made his deed to Alfredo Cristi is derived from the expediente posesorio of 1894. This could after twenty years be converted into a dominion title (Mortgage Law, § 393); but that time did not elapse, and there is no claim of this character. The right in

Teillard v. Green.

question depends upon the expediente posesorio alone. In the first place then, did this proceeding amount to a just title? It is not *per se* a judicial determination of title. It has been declared to be little more than the declaration of possession, which is not uncommon in the common-law states, and is rather the basis of a future *dominio* proceeding, which does declare title. Teillard v. Teillard, 18 P. R. R. 546.

This expediente posesorio is a proceeding under the mortgage law by which a possessor through an *ex parte* proceeding before the local court puts his claim on record. The details are given in title 14 of that law, embracing arts. 389 to 396. Under § 390 it is not necessary that the owner hold a written title. The procedure is that a petition shall give a description of the property, its legal nature, the person from whom acquired, time of possession, and that the written title is not accessible. Then, in the second place, two or more witnesses, residents and land owners of the neighborhood, shall be heard, who shall state the facts within their knowledge as to the property, and the person seeking to record possession must present a certificate showing that the party interested pays the taxes as owner. In case of absence of the adjacent owners, they shall be cited. This does not bind third persons, and they may assert their rights in a court of competent jurisdiction in a declaratory action. Under § 395 an owner without title may record his ownership upon submitting to the judge of the court of first instance a statement of the manner of acquisition, and a representative of the department of public prosecution shall examine the matter and report to the judge.

A certified copy of the proceedings is in evidence, and to this several objections are made. It was not necessary in an expedi-

ente posesorio to produce a documentary title. Under article 438 of the regulations for the execution of the mortgage law this is not required. As to how far Arturo could represent Pablo and the others, as set up in the proceedings, this point is waived by the bill itself, which states the fact of such agency as one of the grounds why the complainant failed to know of what was done. The certificate of the mayor of Añasco, as collector of revenues, could be clearer, but states sufficiently that the Teillard family, of whom Pablo was one, was paying taxes. It would seem, therefore, that the inscription which followed was properly made. *Justo titulo* has been shown by defendant.

10. The effect of the nonresidence of the original parties to the transactions need not be discussed. If Porto Rico and Spain are to be considered as one country, there would be certain results; if they were distinct, there would be other questions. Nonresidents suing each other cannot always set up the same questions of limitation that are permitted to residents. A discussion and decision of this point, however, is not necessary to the determination of the case.

11. So far upon the law of Spain and Porto Rico. That does not know the defense known as a bona fide purchase for value without notice, inasmuch as all questions of title are to be decided upon the local mortgage law. The defense of bona fide purchaser, which is peculiar to equity, runs along the same lines as the civil law, and would produce the same result. It cannot be said that the case shows the defendant is other than a bona fide purchaser for value without notice. What has been said above as to fraud is sufficient on this point.

12. It appears, moreover, that the complainant's case is not borne out by the evidence. She proves, indeed, that she was an

heir of her mother, but it is not satisfactorily proved that her father did not have the right he claimed in the estate in question. It is sufficient that she has not made out a prima facie case as to her title, because, even if the defendant is not to be held as having proved his case, the complainant could not recover. In point of fact, however, the allegations of the defendant seem to be substantially made out. It having been previously decided in this case that the prescription applicable is, that of the ten-twenty-year period (modified by the military order to six years), and that the requisites of good faith and a proper title exist under the facts, it follows, therefore, that the original bill in this case was properly dismissed upon the merits, and also that the present bill of review is without equity, and that it also must be dismissed, as prayed for in the motion of the defendant thereto.

It is so ordered.