265 A.2d 733.

ROBERT HODGE *et al. vs.* OSTEOPATHIC GENERAL HOSPITAL
OF RHODE ISLAND *et al.*

MAY 20, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The plaintiffs, husband and wife, commenced this civil action by a complaint filed in 1967 against the defendant hospital and two doctors for injuries allegedly suffered as a result of defendants' negligence in administering spinal anesthesia to the wife during childbirth and for consequential damages to the husband.[1] This proceeding involves only plaintiffs' action against the hospital. The hospital filed an answer to the complaint containing three defenses. In the third defense it stated that at the time of the alleged incident in 1966 it was a hospital corporation incorporated by an act of the General Assembly of the State of Rhode Island, was sustained in whole or in part by charitable contributions or endowments and was, therefore, immune from liability under the provisions of G. L. 1956, §7-1-22.[2] After a hearing under Super. R. Civ. P. 42(b), on the hospital's third defense, the trial justice granted the hospital's motion for summary judgment on the ground that the hospital was exempt from liability under §7-1-22. He based this ruling on his find-

---

[1] Another aspect of this case was before this court last session in *Hodge* v. *Osteopathic General Hospital*, 105 R. I. 3, 249 A.2d 81.

[2] Section 7-1-22, then in force, read as follows:

"Immunity of hospitals from liability for acts of agents.—No hospital incorporated by the general assembly of this state sustained in whole or in part by charitable contributions or endowments, or the Notre Dame Hospital, incorporated under chapter 1925 of the public laws, 1920, so long as it continues to be sustained in whole or in part by charitable contributions or endowments, shall be liable for the neglect, carelessness, want of skill or for the malicious act, of any of its officers, agents or employees in the management of, or for the care or treatment of, any of the patients or inmates of such hospital; but nothing herein contained shall be so construed as to impair any remedy under existing laws which any person may have against any officer, agent or employee of any such hospital for any wrongful act or omission in the course of his offcial conduct or employment."

This section has since been repealed by P. L. 1968, chap. 43, which expressly provides that it shall apply only to incidents arising after its effective date, October 1, 1968.

ing that, during the period of time involved in this case, defendant hospital was sustained in whole or in part by charitable contributions or endowments. A judgment granting the hospital's motion for summary judgment and dismissing the action against it was entered. The case is here on plaintiffs' appeal from that judgment.

This appeal raises the question whether, on this record, defendant hospital was immune from liability, as a matter of law, under §7-1-22, as applicable in 1966, thus justifying the trial justice's award of summary judgment for the hospital and the dismissal of plaintiffs' action against it.

On August 19, 1967, the hospital filed a motion for summary judgment in accordance with Super. R. Civ. P. 56 and supported its motion with two affidavits. The first, signed by one of its counsel, alleged that the hospital was immune from liability "because it is supported in part by Charitable Contributions and Endowments pursuant to the General Laws of Rhode Island 1956 as amended, Section 7-1-22." The second, signed by the hospital's administrator, states that in his capacity as administrator he had "full and direct knowledge" of the fact that the hospital was sustained in part by charitable contributions and endowments. The plaintiffs filed no counter-affidavits.

On September 26, 1967, plaintiffs propounded interrogatories to the hospital requesting the following information for the hospital's preceding three fiscal years: (1) the amount of charitable contributions received by the hospital and the amount of income from endowment funds, (2) the annual budget of the hospital, (3) the gross income of the hospital, and (4) the profit and loss statements for each of those years or their equivalent.

On September 28, 1967, the hospital's motion for summary judgment was heard before a justice of the Superior Court. Subsequent thereto an order was entered denyin this motion without prejudice.

On December 19, 1967, defendant hospital answered plaintiffs' interrogatories and again filed a Rule 56 motion for summary judgment with attached affidavits alleging immunity from liability under §7-1-22. Again, plaintiffs filed no counter-affidavits. This motion was heard on February 27, 1968, by a justice of the Superior Court, who denied it without prejudice to the hospital's right to assert it again at the time of the trial.

On March 1, 1968, plaintiffs moved pursuant to Super. R. Civ. P. 42(b) for a separate trial on the issue raised by the hospital's third defense and asked for more responsive answers to its interrogatories. Both motions were denied.

It appears from the record that on April 7, 1969, the case was called and continued for a hearing to April 21, 1969. After several pretrial conferences, the trial justice ordered a separate hearing, under Rule 42(b), on the hospital's third defense prior to commencement of the trial on its merits. This hearing was held on April 21, 1969. At this time the hospital renewed its motion for summary judgment and supplemented this motion with its financial statements and the testimony of its assistant administrator. The financial statements were admitted as defendant's exhibits "A" through "K."

In his decision rendered from the bench at the conclusion of the hearing, the trial justice stated that the only issue was whether the hospital was sustained in whole or in part by charitable contributions or endowments. He interpreted the word "sustained," which he considered the key word, as meaning "supported, maintained." He found that the buildings and substantial equipment being used by the hospital in 1967 were financed in substantial part by contributions. He observed that it appeared from the exhibits that at least $200,000 came from cash contributions and that there was a substantial contribution by the

federal government. He concluded that, since the building and equipment that were being used by the hospital came from charity, §7-1-22 applied and the hospital was exempt. He also stated that it was obvious from the operating statement that the hospital could not have operated if it had to buy the building or equipment from fees. The action against the hospital was dismissed on the ground that the hospital was immune under §7-1-22, as applicable in June 1966. On May 5, 1969, an order was entered which contained specific findings of fact on the basis of which the hospital's motion for summary judgment was granted.[3]

---

[3]"(1) During the period from January 1, 1959 to September 30, 1961, the defendant Hospital spent $662,166.81 from a special 'Building Fund' (Exhibit A) for capital expenditures as follows:

|  |  |
|---|---|
| (a) Building | $508,920.62 |
| (b) Equipment | 153,246.19 |

"(2) The principal sources of funds for the 'Building Fund' during the above period were (Exhibit A):

|  |  |
|---|---|
| (a) Cash collections on pledges by contributors | $200,928.31 |
| (In addition to the cash collections, there remained uncollected on Sept. 30, 1961 pledges in the amount of $47,452.50) | |
| (b) Grant from the U. S. Government pursuant to the Hill-Burton Act | 100,643.25 |
| (c) Bank loans | 386,700.00 |
| (d) Other | 43,566.13 |
| Total | $731,837.69 |

"(3) In June 1966 (when the plaintiff Agnes Hodge was a patient at the hospital), the hospital building and some of the equipment being used for her benefit had been paid for from the proceeds of the Special Building Fund.

"(4) From time to time, the defendant Hospital received contributions for general purposes. These contributions were not substantial in amounts. (Exhibits B to K, inclusive; affidavit of Hospital administrator, dated December 13, 1967 — Document No. 39.)

"(5) During the period of time involved in this case, the defendant Hospital was sustained in part by charitable contributions or endowments."

The main thrust of plaintiffs' argument on appeal is that the trial justice's finding that, during the period of time involved in this case, defendant hospital was "sustained" in part by charitable contributions or endowments is wrong, and that, therefore, his decision based on such finding is erroneous and should be overruled. The plaintiffs argue that they have put in issue the hospital's right to the shelter of §7-1-22; that defendant's affidavit, and plaintiffs' interrogatories and the answer filed thereto by the hospital, raised an issue of whether the hospital was "sustained" by charity, and thus whether it was entitled to the statutory immunity; and that, when the issue was raised, the trial justice was required to view the facts in the light most favorable to plaintiffs, to halt the proceedings and leave any determination of the question which was raised for a later proceeding. In brief, plaintiffs argue that the issue was "found" and should *not* have been "determined."

In support of their position, plaintiffs further argue that §7-1-22, is in derogation of the common law and must be strictly construed. They point to the fact that §7-1-22 was originally enacted after the decision in *Glavin* v. *Rhode Island Hospital*, 12 R. I. 411, 34 Am. R. 675, holding that a hospital which was supported by charitable donations was not immune from responsibility for the negligence of its officers, trustees, agents or servants. They admit that, after *Glavin* was decided, the legislature modified the common law in this state to provide for hospital immunity in a proper case. However, they argue that the benefits of that immunity should not be extended to defendant hospital, which they claim is self-sustaining and does not require charitable contributions in order to exist. In the circumstances, they argue, the word "sustained" should be construed so as to mandate a strict construction which would require the extension of immunity under the

statute only where a hospital *cannot exist* without charitable contributions.

The plaintiffs next argue that, under such a construction, defendant hospital is not entitled to immunity under the statute because its financial records show that it realized a net income from its operations during the years 1965, 1966 and 1967, and because the record shows that for each of those years the net income exceeded the charitable contributions received by the hospital. Finally, they argue the fact that charitable contributions were used to provide a portion of the cost of constructing the hospital and purchasing equipment should not allow the hospital to be sheltered ad infinitum; that to accept the trial justice's ruling would not only provide such a shelter but would also lead to the absurd result that if a hospital received only one contribution of $1, it could be forever sheltered under the statute, no matter how large a profit was realized; and that for the reasons cited, immunity under the statute should only be extended where a hospital *cannot exist* without charitable contributions.

We have set forth at some length the plaintiffs' arguments challenging the trial justice's decision because the award of a motion for summary judgment is a drastic remedy which may be granted only within certain well-defined guidelines. 1 Kent, *R. I. Civ. Prac.* §56.4, at 418.

The problem before us involves the question whether the trial justice, on the basis of the record before him, erred in granting a Rule 56 motion for summary judgment. Rule 56(c), in pertinent part, provides that:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law."

In *Marandola* v. *Hillcrest Builders, Inc.*, 102 R. I. 46, 49, 227 A.2d 785, 787, the court, in speaking of this rule, said that in ruling on the motion the trial judge must consider " * * * affidavits and pleadings in the light most favorable to the opposing party, and only when it appears that no genuine issue of material fact is asserted can summary judgment be ordered." The purpose of summary judgment procedure is issue finding, not issue determination. *Slefkin* v. *Tarkomian,* 103 R. I. 495, 498, 238 A.2d 742, 743. While it is true that summary judgment is a drastic remedy, *Mill Factors Corp.* v. *L. S. Building Supplies, Inc.,* 103 R. I. 675, 679, 240 A.2d 720, 722, nevertheless, where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, summary judgment properly issues. *Carroccio* v. *Roger Williams Hospital,* 104 R. I. 617, 619, 247 A.2d 903, 904.

After examining the record and the decision of the trial justice in the context of the foregoing guidelines, we hold that the record establishes as a matter of law (1) that during the period of time involved in this case the defendant hospital was sustained in part by charitable contributions or endowments; (2) that therefore the trial justice did not err in ruling that defendant hospital was immune from liability under §7-1-22; and (3) that consequently he did not commit error in granting the hospital's motion for summary judgment.

In considering the hospital's motion for summary judgment at the hearing on the hospital's defense of immunity, the trial justice recognized that the issue before him was whether the facts presented by the hospital established that it was "sustained in whole or in part by charitable contributions or endowments" during the period in question. He interpreted the word "sustained" to mean "sup-

ported" or "maintained." We agree with his interpretation.[4]

With the foregoing in mind, the trial justice proceeded to examine the facts which had been presented. He said nothing to indicate that there was any issue of fact which was determining. He merely set down as "Findings of Fact" the facts or information contained in the affidavits filed by defendant hospital in support of its motion for summary judgment as supplemented by the financial records furnished by the hospital and the testimony of its assistant administrator. He stated that those facts established that the hospital's physical plant was constructed from a special building fund, totaling $662,166.81; that of this amount $200,928.31 was raised by contributions during the period 1959 to 1961; that, in addition, there was a grant of $100,643.25 from the United States Government under the provisions of the Hill-Burton Act; and that the balance of the special building fund in the amount of $386,700 was borrowed from banks.

The trial justice also stated that in June 1966, when plaintiff Agnes Hodge was a patient at the hospital, the hospital building and some of the equipment being used for her benefit had been paid for from the proceeds of the special building fund. He also pointed out that from time to time, the hospital received contributions, which were not substantial in amounts, for general purposes. This is supported by the uncontradicted testimony of the assistant administrator who stated that the hospital conducted a

---

[4]Webster's New International Dictionary (3rd Ed.) defines "sustain" to mean:

"1: to give support (as military support) to: uphold by aiding or backing up: * * *

"2: to provide for the support or maintenance of: supply with sustenance: Nourish * * *

"3a: to cause to continue * * *: to keep up esp. without interruption, diminution, or flagging: Maintain, Prolong * * *."

development program for contributions from the general public during the years 1961 "up to the present time" for equipment and things necessary for the hospital.

On this record there was no fact issue to be resolved by the trial justice. The only question for him to decide was the legal effect of the established facts. Did those facts, when viewed in the light most favorable to the plaintiffs, establish that during the pertinent period defendant hospital was sustained in part by charitable contributions or endowments? If they did, the hospital was immune under §7-1-22; if they did not, the hospital was not covered by the statute. The trial justice held, as a matter of law, that on the basis of the established facts the hospital was sustained in part by charitable contributions. We agree with his ruling.

We have considered plaintiffs' argument that §7-1-22 is in derogation of the common law and therefore must be strictly construed. While we agree with the statement that statutes in derogation of the common law should be strictly construed, see *Atlantic Refining Co.* v. *Director of Public Works,* 104 R. I. 436, 244 A.2d 853; we do not deem it necessary in this case to decide whether §7-1-22 is in derogation of the common law. However, even if we decided that the statute was in derogation of the common law and therefore should be strictly construed, we would not agree with plaintiffs' argument that the word "sustained" should be construed so that the statutory immunity should only be extended where a hospital *cannot exist* (be "sustained") without charitable contributions.

Section 7-1-22 provides in effect that the immunity granted under the statute shall be in force " * * * so long as it continues to be sustained in whole or in part by charitable contributions or endowments * * *." The established facts in this case are that during the period of time involved in this case, the hospital was sustained in part

by charitable contributions or endowments. The testimony of the assistant administrator establishes that the development program was in existence from 1961 up to the time of the hearing on April 21, 1969. For this reason we do not deem it necessary to discuss further plaintiffs' argument that "The fact that charitable contributions were used to provide a *portion* of the cost of constructing the hospital and purchasing equipment should not allow the hospital to be sheltered *ad infinitum*."

The plaintiffs' final argument is that, as a matter of public policy, §7-1-22 should be liberally applied to benefit those injured due to a hospital's negligence. They cite eminent authorities which have rejected the doctrine of charitable immunity by judicial decision and have overruled prior law which recognized the doctrine of charitable immunity.[5] We are cognizant of these authorities. However, we are here confronted with a different situation.

Following the decision in *Glavin* v. *Rhode Island Hospital, supra,* rejecting the doctrine of charitable immunity, the legislature in 1896 enacted what was §7-1-22, granting hospitals immunity from liability for negligence in certain cases and under the conditions therein prescribed. In enacting that statute, the legislature, in its wisdom, declared the public policy of this state. This court upheld the constitutionality of that statute in *Fournier* v. *Miriam Hospital,* 93 R. I. 299, 175 A.2d 298, *reargument denied,* 93 R. I. 308, 179 A.2d 578. While we are sympathetic with plaintiffs' arguments on this issue, they are addressed to the wrong forum. As we have already pointed out, the legislature, in 1968, enacted P. L. 1968, chap. 43, which repealed §7-1-22. However, it expressly provided that the act was to take effect on October 1, 1968, and that it "shall apply only to incidents arising thereafter." In view of

---

[5]For a discussion of such cases see Annot., 25 A.L.R.2d 29 (1952).

this expression of public policy by the legislature, the plaintiffs' present argument cannot prevail.

The judgment is affirmed.

*Edward D. Feldstein, Grafton H. Willey, III,* for plaintiffs.

*Higgins & Slattery, Eugene V. Higgins,* for Osteopathic General Hospital of Rhode Island, defendant.