Barbara **RUSTIGIAN** d/b/a
**Castle Realty,**

v.

**John CELONA et al.**

**No. 81–477–Appeal.**

Supreme Court of Rhode Island.

June 20, 1984.

Arnold N. Montaquila, Montaquila & De-Falco, Johnston, for plaintiff.

Joseph N. Cassiere, Alfred Factor, Kirshenbaum & Kirshenbaum, Providence, for defendants.

## OPINION

SHEA, Justice.

The defendants, John and Marlene Celona, appeal from an order entered in Superior Court granting the plaintiff's motion for summary judgment. The plaintiff is Barbara Rustigian, a real estate broker doing business as Castle Realty. She brought this action to recover a real estate brokerage commission pursuant to an agreement between the parties. The question is whether the trial justice erred in concluding that there was no genuine issue of material fact when he granted a motion for summary judgment. We reverse.

### I

On June 19, 1980, the parties entered into an Exclusive Right to Sell agreement. By the terms of this agreement, "if Castle Realty, or anyone else, including the owner(s) produces a buyer [within thirty days], namely Taco Bell [a California corporation engaged in the restaurant business], ready, willing, and able to buy said property at a price and on terms acceptable to the owner(s)," then defendants agreed to pay plaintiff a commission of $8,875. A clause in the agreement stated that defendants also agreed to pay plaintiff the same commission if, within twelve months of the termination of this agreement, the property was sold to Taco Bell, which had been shown the property through the efforts of plaintiff. The Purchase Agreement stated that Taco Bell was to pay defendants the sum of $155,000 for the property, subject to the terms and conditions agreed to by the parties.

On June 19, defendants executed a purchase and sale agreement with Taco Bell, which was interested in constructing a restaurant on the property. The defendants do not dispute that during the listing period, plaintiff either brought Taco Bell and

the sellers together or showed Taco Bell the property.

On February 24, 1981, Taco Bell signed the purchase agreement to buy defendants' land. On March 10, 1981, defendants accepted this offer and agreed to be bound by its terms. Taco Bell required defendants to obtain an additional agreement with an adjacent land owner for an easement granting parking and access rights on neighboring land. This agreement was not reached until August 4, 1981. During the interim, Taco Bell and defendants negotiated additional matters that were not part of the original purchase agreement. Finally, on August 6, 1981, Taco Bell purchased the land by warranty deed at the agreed-upon price of $155,000.

The plaintiff brought this action on May 22, 1981, prior to the delivery of the deed, seeking a broker's commission in the amount of $8,875 plus interest, costs, and attorneys' fees. The plaintiff later filed a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure. The trial justice granted the motion, and defendants appealed.

II

The sole issue is whether the trial justice erred in concluding that there was no genuine issue of material fact when he granted a motion for summary judgment. The defendants contend that a genuine issue of material fact did exist, specifically, whether plaintiff failed to produce a ready, willing, and able buyer, that is, whether plaintiff was the procuring cause of the sale. The defendants also contend that the sale was not made according to the terms of the Exclusive Right to Sell agreement because the sale took more than one year to complete. The plaintiff argues that she is entitled to a commission because shortly after the parties signed the brokerage agreement, she introduced defendants to the representatives of Taco Bell. The plaintiff further claims that on August 6, 1981, the sale was completed according to the terms of the March 10, 1981 purchase and sale

agreement and that agreement was entered into during the one-year tack-on period under the brokerage contract's extender clause.

 When deciding a motion for summary judgment, the trial justice must keep in mind that it "is a drastic remedy and should be cautiously applied." *Steinberg v. State*, R.I., 427 A.2d 338, 339–40 (1981) (quoting *Ardente v. Horan*, 117 R.I. 254, 256–57, 366 A.2d 162, 164 (1976)). If the affidavit of the moving party fails to establish the absence of a material factual issue, the trial justice should deny the motion. *Id.*, 427 A.2d at 340. "And in ruling on a motion for summary judgment, the trial justice must look for factual issues, not determine them." *Id.; see also Hodge v. Osteopathic General Hospital of Rhode Island*, 107 R.I. 135, 142, 265 A.2d 733, 737 (1970). Accordingly, when considering such a motion, "the trial justice may not pass upon the weight or credibility of the evidence." *Steinberg v. State*, 427 A.2d at 340 (quoting *Doyle v. State*, 411 A.2d 907, 909 (1980)). "Instead, the justice's only function is to determine whether there are any issues involving material facts." *Id.; see also Industrial National Bank v. Peloso*, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979).

 As a prerequisite to an order for summary judgment, the trial justice must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion. *Steinberg v. State*, 427 A.2d at 340; *Hodge v. Osteopathic General Hospital of Rhode Island*, 107 R.I. at 142, 265 A.2d at 737. Consequently, if no issues of material fact appear and the moving party is entitled to judgment as a matter of law, the trial justice may enter an order for summary judgment. *Steinberg v. State*, 427 A.2d at 340. When a genuine issue of fact exists, however, the trial justice must not decide the issue. The court should simply ascertain the existence of the factual issue and deny the motion for summary

judgment. *Id.; see O'Connor v. McKanna,* 116 R.I. 627, 633, 359 A.2d 350, 353 (1976). On appeal we review the propriety of the summary-judgment order by the same standards as the trial justice, which review includes an examination of the pleadings and affidavits viewed in a light most favorable to the party opposing the motion. *Steinberg v. State,* 427 A.2d at 340; *see Julian v. Zayre Corp.,* 120 R.I. 494, 497, 388 A.2d 813, 815 (1978).

 It is the law of this state that when a broker is the procuring cause in bringing about a sale, that is, when a sale results from a broker's efforts or negotiations, he or she is entitled to a commission even if the sale was actually accomplished through the efforts of other persons. *Gettler v. Caffier,* 92 R.I. 19, 22, 165 A.2d 730, 732 (1960). A broker is the effective agent, or the procuring cause, when he is the first broker to interest the prospective purchaser in the property, when he causes such purchaser to inspect or view the property, and when he conducts negotiations concerning a sale thereof with the prospective purchaser. *Id.* A broker has sufficiently performed and is entitled to compensation when he or she has produced a prospective purchaser who is ready, willing, and able to purchase at the price and terms of the seller. *Judd Realty, Inc. v. Tedesco,* R.I., 400 A.2d 952, 955 (1979); *Kirby, Inc. v. Weiler,* 108 R.I. 423, 429, 276 A.2d 285, 288 (1971). This rule generally applies in situations in which no special contract delineates what constitutes special performance thereunder. *Judd Realty, Inc. v. Tedesco,* 400 A.2d at 955.

The Exclusive Right to Sell agreement in the present case is substantially identical to the brokerage agreement in *Judd Realty.*[1] It contains no language indicating any intention of the parties to depart from the general rule.

In determining whether Castle Realty is entitled to a commission, we must decide whether Rustigian was the effective agent or procuring cause of the sale. Apparently no one disputes the assertion that plaintiff was the first broker to interest Taco Bell in the property and that she caused Taco Bell to inspect and view the property in question. However, it does not appear from the evidence established thus far that she "conducted negotiations concerning a sale thereof with the prospective purchaser." *Gettler v. Caffier,* 92 R.I. at 22, 165 A.2d at 732. Indeed, plaintiff concedes in her brief that after she introduced the prospective purchaser to the seller, "Celona and the corporate agents [of Taco Bell] directly carried on lengthy and fruitful negotiations over the purchase and sale of defendants' land." Moreover, plaintiff acknowledges that "[t]hese negotiations were marked by a series of counteroffers between defendants and Taco Bell." In fact, one of the conditions specified in the purchase agreement was that defendant obtain a release from an adjoining landowner regarding common access into the site. There is no indication in the record, however, that plaintiff assisted the parties at all in their efforts to obtain that release.

The failure to obtain, execute, and deliver such a release prior to the closing on the subject parcel would "make this offer null and void." Thus, the condition precedent to the enforceability of the purchase agreement was not satisfied until August 4, 1981, when the adjoining landowner signed the necessary release. This occurred approximately three weeks after July 19, 1981, the date upon which the twelve-month extender clause incorporated into the original brokerage contract had expired. Therefore, although plaintiff produced a purchaser who was financially able, it is not clear that Taco Bell was either ready or willing to consummate the deal until August 4, 1981. If that is so, plaintiff's entitlement to a commission could be precluded.

---

**1.** The only difference is that *Judd Realty, Inc. v. Tedesco,* R.I., 400 A.2d 952 (1979), included a sixty-day extender clause, to operate subsequent to the exclusive right-to-sell period, whereas in the case at bar the extender clause set forth a twelve-month period.

Although Taco Bell was financially able, possibly it was not ready or willing to complete the purchase in accordance with the contract until the necessary release was obtained. Therefore, plaintiff, like the broker in *Gartner v. Higgins,* 100 R.I. 285, 289, 214 A.2d 849, 851–52 (1965), may have failed to satisfy the three prerequisites necessary to obtain a commission, specifically, the procurement of a prospective purchaser who is (1) ready, (2) willing, and (3) able to purchase at the price and terms of the seller. *Judd Realty, Inc. v. Tedesco,* 400 A.2d at 955.

 The question also arises concerning whether a "sale" within the meaning of the contract language took place on or before July 19, 1981. This court, relying upon *Butler v. Thomson,* 92 U.S. 412, 414–15, 23 L.Ed. 684, 685 (1875), has stated that "[g]enerally, 'sale' is a word of precise legal import that connotes the formation of a contract under which the seller, in consideration of payment or the promise of payment, transfers to the buyer title and possession to property." *State v. Eckert,* 120 R.I. 560, 571, 389 A.2d 1234, 1240 (1978). In a real property context, the execution of a purchase and sale agreement renders the buyer the equitable owner but does not result in a transfer of possession or legal title. *See Jakober v. E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. 104, 110, 265 A.2d 429, 433 (1970). Thus, at this juncture, a sale does not appear to have occurred in this case until August 6, 1981, when a deed was executed. If this is so, the terms of the brokerage agreement would be rendered ineffective.

As we apply the standards applicable to the review of a motion for summary judgment, there appear to be at least two issues of material fact that preclude the affirmance of the trial justice's decision. One issue is whether either the defendants or Taco Bell unduly delayed the procurement of the necessary release from the adjacent landowner, which release occurred three weeks after the expiration of the brokerage agreement. If there was no deliberate delay or attempt to circumvent the broker's commission, then the plaintiff would not be entitled to a broker's fee. However, if there was undue or deliberate delay, the plaintiff's claim would have merit. Second, some question remains concerning whether the plaintiff actively sought to mediate the negotiations between the defendants and Taco Bell and was precluded from doing so by the parties—or whether she sat idly by. Such a determination would have considerable impact in light of the negotiation requirement set forth in *Kirby, Inc. v. Weiler,* 108 R.I. at 427, 276 A.2d at 288, and *Gettler v. Caffier,* 92 R.I. at 22, 165 A.2d at 732.

For the reasons stated, the defendants' appeal is sustained. The summary judgment entered below is vacated, and the case is remanded to the Superior Court for further proceedings.