[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matter presently before this Court is Mortgage Guarantee and Title Company's ("Mortgage Guarantee") motion for summary judgment pursuant to Rule 56 of Sup. Ct. R. Civ. P.
The facts from which this cause of action arises are virtually undisputed. On April 16, 1987, Capital Center Associates Four ("Capital Center") purchased two parcels of land from Jon and Carol Rosenblatt ("Rosenblatt") located at 146-148 Taber Avenue ("Parcel One") and 150-154 Taber Avenue ("Parcel Two") in Providence, Rhode Island. Capital Center executed a promissory note in the principal amount of Three Hundred Forty Thousand Dollars ($340,000), secured by a mortgage on both Parcel One and Parcel Two. Both Capital Center's deed and mortgage incorrectly described Parcel Two as Lot 975. The correct description of Parcel Two is Lot number 97. Mortgage Guarantee issued a policy of title insurance in favor of Pawtucket Institution for Savings ("Pawtucket Savings"), covering the mortgage and including the improper lot description.
On June 5, 1987, Capital Center received from Rosenblatt a corrective deed which properly reflected Parcel Two as Lot number 97. Pawtucket Savings never received notice of either the improper lot description in the original mortgage or the subsequent corrective deed.
Capital Center defaulted on the promissory note on April 26, 1990. Attleboro Pawtucket Savings Bank ("plaintiff"), successor in interest to Pawtucket Savings, initiated foreclosure proceedings against both Parcel One and Parcel Two. Plaintiff tentatively sold both parcels to Irwin Loft for a combined sales price of Three Hundred Eighty-Seven Thousand Dollars ($387,000) ($195,000 for Parcel One and $192,000 for Parcel Two). The improper lot description of Parcel Two in the mortgage, however, caused the title to be unmarketable and prevented consummation of the sale to Irwin Loft.
On August 8, 1990, plaintiff forwarded a claim letter to Mortgage Guarantee as required under the title policy. Mortgage Guarantee, pursuant to paragraph 3(c) of the "Conditions and Stipulations" section of the policy, elected to initiate proceedings in this Court to clear the defective title. Prior to this Court's entry of judgment nisi correcting the lot description and permitting foreclosure, plaintiff filed the instant action for damages under the policy.
Plaintiff purchased Parcel One at the second foreclosure sale for One Hundred Seventy Thousand Dollars ($170,000), and on March 7, 1991 sold the property to a third party for One Hundred Fifty-Five Thousand Dollars ($155,000). Plaintiff alleges a Forty Thousand Dollar ($40,000) loss on the sale of Parcel One representing the difference between the Irwin Loft's original bid ($195,000) and the actual sales price ($155,000). Subsequent to this Court's judgment correcting the lot description defect and permitting foreclosure, plaintiff held a second foreclosure sale for Parcel Two. Plaintiff purchased Parcel Two at the second foreclosure sale for One Hundred Eighty Thousand Dollars ($180,000), and on October 3, 1991 sold the property to a third party for One Hundred Seventy Thousand Dollars ($170,000). With respect to Parcel Two, plaintiff alleges a Twenty-Two Thousand Dollar ($22,000) loss representing the difference between Irwin Loft's original bid ($192,000) and the actual sales price ($170,000).
Plaintiff's one count complaint alleges that it is entitled to recover under the title insurance policy since a defect in the original mortgage and deed prevented the original foreclosure sale, resulting in damages because the subsequent foreclosure sales realized substantially reduced selling prices. Mortgage Guarantee contends that it is entitled to summary judgment since, pursuant to the terms of the policy, it initiated an action in this Court to clear the title defect, thereby fulfilling all of its obligations under the policy.
Summary judgment is a means of curtailing litigation in the early stages where the court finds that no genuine issue of material fact exists. Trend Precious Metals v. Sammartino,577 A.2d 986, 988 (R.I. 1990). The court must recognize that summary judgment is a drastic remedy which should be cautiously applied.Rustigian v. Celona, 478 A.2d 187, 189 (R.I. 1984). The court must look for factual issues and is precluded from assessing the weight or credibility of the evidence. Id. When passing on a motion for summary judgment, the court must examine all pleadings, affidavits, and other similar matters in the light most favorable to the non-moving party before determining whether a genuine issue of material fact exists. Trend Precious Metals,577 A.2d 986, 988.
A title insurance policy is a contract between the insurer and insured which defines the rights and obligations of the respective parties. Diversified Mortgage Investors v. U.S. LifeIns. Co., 544 F.2d 571, 575 (2d Cir. 1976). The primary purpose of a title insurance policy is to protect the insured against potential losses resulting from defects in the title. 9 Appleman, Insurance Law and Practice § 5201 (1981). The title insurance policy is a contract of indemnity under which the insured may only recover for actual losses suffered as provided for by the policy terms. Diversified Mortgage Investors, 544 F.2d 571, 575 n. 2. When construing the terms and conditions of a policy, courts must bear in mind that title policies are subject to the same strict rules of construction as are other insurance contracts. 9 Appleman, Insurance Law and Practice § 5201.
It is well established that where the language of an insurance contract is clear and unambiguous, the court must apply its terms as written. Factory Mut. Liab. Ins. Co. v. Cooper,106 R.I. 632, 635, 262 A.2d 370, 372 (1970). The court must examine the policy in its entirety and give the contract language its plain, ordinary, and usual meaning. Id. Absent fraud or mutual mistake, the parties are bound to the terms of the written instrument. Id.
The title insurance policy involved in the instant action provides that Mortgage Guarantee will insure against loss or damages sustained or incurred by the insured resulting from various incidents including: any defect in or lien or encumbrance on such title; unmarketability of such title; and the invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest. . . . Plaintiff contends that the losses it suffered from the erroneous description in the original mortgage and deed are clearly covered under any one of the preceding coverage scenarios. Assuming that plaintiff's contentions are correct, Mortgage Guarantee's liability depends primarily on the terms contained in the "Conditions and Stipulations" section of the policy.
Subsection 3(c) of the "Conditions and Stipulations" section provides that Mortgage Guarantee has the right to institute any action necessary to establish the insured title, regardless of whether it shall ultimately be liable under the policy, and that any such action will not result in a concession of liability or a waiver of any other policy provision. This subsection specifically authorizes the action initiated by Mortgage Guarantee in this Court to clear the defect in the Parcel Two mortgage. Contrary to Mortgage Guarantee's contention, however, initiation of an action to establish title pursuant to subsection 3(c) does not automatically absolve Mortgage Guarantee of its liability for actual damages suffered as a result of the title defect. Subsection 3(c) merely provides that if Mortgage Guarantee elects to initiate proceedings to clear title, such election shall not result in an admission of liability under the policy or a waiver of other applicable policy provisions.
To determine whether Mortgage Guarantee is liable under the policy, we must turn to subsection 7 of "Conditions and Stipulations" entitled "Limitation of Liability." Subsection 7 provides that the insured cannot maintain a claim under the title policy where Mortgage Guarantee, through litigation or otherwise, removes the defect within a reasonable time after receiving notice. This limitation on liability clearly requires that Mortgage Guarantee will not be liable for damages if it clears the title defect within a reasonable time.
The first foreclosure sale for Parcel One and Parcel Two failed because Parcel Two's improper lot number designation resulted in unmarketable title. Mortgage Guarantee thereafter received notice of the title defect on August 8, 1990. Mortgage Guarantee shortly thereafter initiated proceedings in this Court to clear the title defect. Prior to the entry of this Court's judgment clarifying the title defect, plaintiff filed the instant civil action on September 24, 1990 seeking damages under the policy. Plaintiff, however, has alleged no facts which indicate that Mortgage Guarantee did not act to clear the title within a reasonable time.
It is undisputed that the title insurance contract governs the rights and obligations of the parties to the instant action. The contract clearly requires that Mortgage Guarantee will not be liable for damages if it clears title defects within a reasonable time. Plaintiff's allegation of damages, standing alone, is insufficient to support a conclusion that Mortgage Guarantee did not act within a reasonable time. Plaintiff alleges no facts which would indicate that Mortgage Guarantee unreasonably delayed its action to clear the title defect. Mortgage Guarantee filed an action in this Court and cleared the title defect shortly after receiving notice. It is clear under these facts that Mortgage Guarantee complied with its contractual obligation to correct title defects within a reasonable time. Since this Court is satisfied that Mortgage Guarantee acted within a reasonable time to clear the title defect, the contract specifically mandates that plaintiff cannot maintain this cause of action for damages. Accordingly, Mortgage Guarantee's motion for summary judgment is hereby granted.
Counsel shall prepare the appropriate judgment for entry.