273 A.2d 663.

ROBERT COLVIN *vs.* EARL GOLDENBERG.

FEBRUARY 18, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This suit was commenced in July 1964 as an action for trespass on the case for negligence. It was tried in October 1968 before a justice of the Superior Court sitting without a jury as a civil action under the court's new rules of civil procedure. The trial justice found for the plaintiff and awarded him $1,386.60. Thereafter, the defendant's motion for a new trial was denied and he instituted this appeal.[1]

The suit was brought to recover damages for injuries sustained by plaintiff in an automobile accident which

---

[1]The present appeal marks the second time this case has been before us. Earlier in *Colvin* v. *Goldenberg*, 101 R. I. 338, 223 A.2d 350, the defendant had been defaulted and a nil dicit judgment was entered against him for $4,500. Subsequently, the defendant's motion to vacate the judgment was granted upon condition he pay the then plaintiff's counsel a fee of $250. We ruled that counsel's acceptance of the fee precluded any appeal by the plaintiff from the order removing the default.

occurred on December 24, 1962 at approximately 10:30 a.m. on Broad Street near Winter Street in Providence. The plaintiff contends that he sustained his injuries when, while crossing from the easterly to the westerly sidewalk of Broad Street, he was struck by an automobile owned and operated by defendant.

The only witnesses who testified to the nature of the mishap were the litigants. While most of their testimony was in direct conflict, there was agreement on some physical facts. Where Broad Street meets Winter Street it runs in a general northerly and southerly direction. Winter Street runs from the westerly side of Broad Street towards the west. There is an intersection at this location. It is formed by a third public highway called Lockwood Street. Lockwood Street runs from the easterly side of Broad Street towards the east. Traffic at this location is controlled by a signal light.

Colvin testified that when he crossed Broad Street, he used the crosswalk. He said he waited until the light turned green before he started to cross the street. There were two cars headed easterly on Winter Street that had stopped at the red light. When the light turned green, Colvin began to walk across the street. When he was within eight feet of the westerly curb of Broad Street, he stopped to allow the two cars which had stopped at the light to proceed from Winter Street southerly onto Broad Street. Once the two cars had passed him, Colvin described how a third car (defendant's) then came out of Winter Street onto Broad Street and struck him. Colvin testified that immediately after he was hit defendant told him that he did not see plaintiff because he was looking out at the traffic light.

The defendant Goldenberg gave the trial justice a much different tale. He claimed that his was the first automobile that was stopped on Winter Street waiting for a change

in the light. When the light turned green, he moved slowly from Winter Street to Broad Street past the crosswalk. It was at this point, Goldenberg said, that he observed a man standing between two cars which were parked alongside the westerly curb. This person, defendant testified, seemed to be walking to the westerly sidewalk with his back to the southbound Broad Street traffic. Upon hearing a "slap" on the right side of his car, Goldenberg stopped and left his automobile. He then discovered Colvin getting up from the road. The defendant insisted that the collision did not occur on the crosswalk.

A physician who treated plaintiff described his patient's injuries as "painful." The plaintiff suffered a deep laceration to his right knee, multiple contusions and abrasions, a sprain of the left thigh and bursitis of the left knee. At the time he was injured, Colvin was employed as a supervisor of the stock department of a large manufacturing concern. He was out of work for a period of over three months.

We find no merit in defendant's contention that plaintiff's contributory negligence bars him from recovery in this suit. This court has repeatedly held that with rare exception the issue of contributory negligence in a case is a question of fact. *Waltz* v. *Aycrigg,* 103 R. I. 109, 235 A.2d 338; *Ferretti* v. *Berry,* 96 R. I. 67, 189 A.2d 344; *Westfield* v. *Yellow Cab Co.,* 94 R. I. 206, 179 A.2d 501. Although in *Ferreira* v. *McGrath Truck Leasing Corp.,* 104 R. I. 642, 247 A.2d 842, we did say there are "unique" cases where a person can be held to be contributorily negligent as a matter of law, the case at bar cannot be so classified. Here, defendant made no motion to dismiss as he might have done under the provisions of Super. R. Civ. P. 41(b)(2). Instead, he hoped that he had convinced the trial justice that Colvin had hit his car, not that he had hit Colvin. The trial court, however, believed that

plaintiff was proceeding along the crosswalk in obedience to the green light, that he had stopped to let the two cars he described come out of Winter Street onto Broad Street and that it was after this time that defendant struck plaintiff when he was on the crosswalk. The trier of fact, therefore, expressly found that plaintiff was in the exercise of due care. We have examined the record and find no reason whatever to disturb this finding.

During the trial, it was brought out that while he was disabled, plaintiff received weekly payments of money from two different sources which he described as social security benefits and money paid him by an insurance company through some type of group insurance funded by plaintiff's employer. The defendant argues that the trial justice should have deducted all of this money from the damages he awarded plaintiff. Such a contention flies in the face of the collateral source doctrine which has become a well-established part of the Rhode Island law.[2] This rule requires a tort-feasor to pay in full the damages suffered by the injured person without credit for any amounts received by the injured person from sources independent of the defendant. The rationale of this rule is that the injured person is entitled to be made whole, since it is no concern of the tort-feasor that someone else completely unconnected with the tort-feasor has aided his victim because of a duty assumed by contract or imposed by law or some genuine benevolent motive on the part of the donor. *Pemrock, Inc.* v. *Essco Co.*, 252 Md. 374, 249 A.2d 711; *Patusco* v. *Prince Macaroni, Inc.*, 50 N. J. 365, 235 A.2d 465.

---

[2]See *Aldcroft* v. *Fidelity and Casualty Co.*, 106 R. I. 311, 259 A.2d 408; *Oddo* v. *Cardi*, 100 R. I. 578, 218 A.2d 373; *Coia* v. *Eastern Concrete Products Co.*, 85 R. I. 128, 127 A.2d 858; *Audette* v. *New England Transportation Co.*, 71 R. I. 420, 46 A.2d 570; *Perry* v. *New England Transportation Co.*, 71 R. I. 352, 45 A.2d 481.

The only phase of defendant's appeal which deserves and requires any extended discussion is his claim that the trial judge erred in denying his motion for a new trial. This observation is not prompted by anything offered by defendant in support of his assertion but, because as it has been so well argued and briefed by plaintiff, this phase of defendant's appeal presents a question of first impression in this state which was alluded to in *Danal Jewelry Co.* v. *Fireman's Fund Insurance Co.,* 107 R. I. 33, 264 A.2d 320, but never decided. The issue to be resolved is whether a motion for a new trial lies under Super. R. Civ. P. 59(a) in an action tried without a jury. The answer is that such a motion is in order.

Prior to the adoption of the new rules, the sole ground for a new trial in jury-waived law action was newly discovered evidence. See G. L. 1956 (1969 Reenactment) §9-23-2; *Thrift* v. *Thrift,* 30 R. I. 456, 76 A. 105. With the exception of a motion based on this particular ground, once a decision had been entered by a court sitting without a jury, all control of the case was lost and the sole remedy for any alleged error was in the Supreme Court by way of a bill of exceptions. Once the trial justice's decision was entered on the docket, he could not thereafter revise or change his decision. *Everett J. Horton & Co.* v. *Grinnell,* 60 R. I. 457, 199 A. 315; *Whitford, Bartlett & Co.* v. *Townsend,* 32 R. I. 392, 79 A. 960; *Ashaway Nat'l Bank* v. *Superior Court,* 28 R. I. 355, 67 A. 523. This rule no longer controls because Rule 59 (a) (2) provides that a new trial may be had in a civil action tried without a jury for any of the reasons for which an equity court in this state might grant a petition for rehearing.

While in *Rounds* v. *Tefft,* 96 R. I. 274, 190 A.2d 727, this court has held that §9-23-2 with its provision for a new trial in jury-waived cases for newly discovered evidence did not apply to a suit in equity, it has never set

forth with any degree of clarity definitive reasons which could be considered as sufficient cause for a rehearing in an equity suit. In absence of any clear-cut rules in this regard, we have examined the cases in this state wherein a rehearing was sought. All such cases were decided in the mid and late eighteen hundreds. The first petition for a rehearing to be considered by this court was filed in *Hodges* v. *N. E. Screw Co.*, 3 R. I. 9 (1853). In a most informative opinion written by Chief Justice Greene it was pointed out that under the English chancery practice an application for a rehearing could be made any time between the entry of a decree and its enrollment. However, since enrollment was not practiced in this state, the court decided that even though a decree might have been entered, an application for a rehearing would lie. As to the causes for a rehearing, the court stated that a rehearing might be allowed upon the presentation of a certificate of counsel. This was the practice in England, the court observed, which had been adopted by the Circuit Courts of the United States and the courts of the several states.

The court in *Hodges* said that the grant of a rehearing was a matter of discretion with the discretion being liberally exercised in favor of a rehearing. This sentiment was once again expressed in *Randall* v. *Peckham,* 11 R. I. 600 (1877).[3] It must be kept in mind, however, that at the time of *Hodges* and *Randall* and up until 1905, this court had original jurisdiction of equity causes. There was no appeal.[4] Any error had to be corrected by filing with this

---

[3]There was a dissent in *Randall* by Justice Potter. He faulted the court's holding in *Hodges* for its failure to differentiate between a petition for a rehearing and a bill of review. He points out that in the true equity practice only the final decree was enrolled. The remedy after enrollment was a bill of review.

[4]Prior to 1905 there were two divisions to the Rhode Island Supreme Court — an Appellate Division and the Common Pleas Division. The Common Pleas Division sat for the trial of jury cases. Justices were

court either a petition for a rehearing or a bill of review. Later, in *Philip Allen & Sons* v. *Woonsocket Co.*, 13 R. I. 146 (1880), this court in denying a petition for rehearing by the respondent refused to consider a newly offered defense of the complainant's alleged laches or the petitioner's claim of newly discovered evidence. In rejecting the newly discovered evidence, the court felt that a part of new evidence could have been obtained at the time of the original hearing and the other portion thereof was purely cumulative. Several years later (1887) the court in *Vincent* v. *Matthews*, 15 R. I. 509, 8 A. 704, said that a bill of review might be used to set aside a consent decree wherein it was alleged that the consent had been given by mistake. In that same year the court declared in *Shepard* v. *Taylor*, 16 R. I. 166, 13 A. 105, that the *Hodges* case stood for the proposition that a rehearing would be granted "even where the error alleged was simply an error of law." While strictly speaking a bill of review differs from a petition for a rehearing in that a bill is the proper remedy to set aside a decree which has become final, it was observed in *Williams* v. *Starkweather*, 24 R. I. 512, 53 A. 870, that the differences between the two was more technical than substantive in that they both seek to set aside a decree of the equity court.

When the Legislature in 1905 adopted the Court and Practice Act, the original equity jurisdiction assumed by this court was transferred to a newly formed trial court,

---

designated to sit in the Common Pleas Division and conduct jury trials. Full and exclusive equity jurisdiction was exercised by the Appellate Division. It also considered all questions of law brought before it on petitions for new trials or raised in the course of pleadings in the Common Pleas Division either by demurrer or otherwise. 3 Field, State of Rhode Island and Providence Plantations at the End of the Century: A History, p. 107. For a rather critical view of the dual functions exercised by this court prior to 1905, see also Eaton, The Development of the Judicial System in Rhode Island, 14 Yale L. J. 148.

the Superior Court. Since this date, we have exercised general appellate jurisdiction not only in law but also in equity. As noted before, our research has failed to uncover one case since the turn of the century where this court has ever been called upon to set forth the grounds which might warrant a rehearing of an equitable cause.

While in early times in this country a rehearing might, as in England, be awarded upon the presentation of certificate of counsel, the practice ultimately fell out of favor because it was considered an imposition on the court's time and also tended to needlessly prolong litigation. *Jenkins* v. *Eldredge,* 3 Story 299; *Giant Powder Co.* v. *California Vigoret Powder Co.,* 5 F. 197 (Circuit Ct. D. Cal. 1880). Although this court in *Hodges* stated that a rehearing should be granted with liberality, things have changed. Today, the appellate facilities of this court are available to a litigant in all nonjury cases whether they be legal or equitable in character. The need for the liberality expressed in *Hodges* is no longer so.

We have searched the rules of the Superior Court. The court's equity rules adopted on July 17, 1905, made no specific provisions for rehearings. Rule 41 did provide that clerical mistakes or "errors arising from an accidental slip or omission" appearing in a decree before its enrollment could be corrected without the necessity of a "rehearing." This provision is to be found in all subsequent revisions of the rules.

In Story, *Equity Pleadings* §404 (10th ed. 1892), the learned author states there are but two instances in which a bill of review may be brought. He then quotes the Ordinances in Chancery of Lord-Chancellor Bacon. The two instances are (1) an error of law appearing in the body of the decree without further examination of matters of fact or (2) some new matter which has arisen sometime after the decree. See also 2 Daniell's Chancery, Pleading

& Practice (6th Amer. Ed.) §1576. Since this court, as in *Hodges,* has shown high regard for the equity practices found in the federal courts, we believe that their practice should be our guide. There have been explicit rules in the United States courts up to the time of the adoption of the federal rules of civil procedure. In Hopkins, *Federal Equity Rules* (8th ed. 1912), is found Rule 69. It concerns petitions for rehearing and it is obvious from the annotation accompanying this rule that any such petition must be based upon newly discovered evidence or alleged errors of law apparent in the record. We adopt the federal view as our guide. Not all apparent errors of law give rise to a petition for a rehearing but only those which are manifestly wrong and appear on the pleadings, record and decree, excluding the evidence. *Irvin* v. *Buick Motor Co.,* 88 F.2d 947 (8th Cir. 1937). If a decree was merely erroneous when the law is applied to the evidence, the error is to be corrected in the appellate court by way of an appeal rather than in the trial court by a petition for rehearing. A bill of review does not operate as an exception or an appeal. *Bailey's Estate,* 291 Pa. 421, 140 A. 145. It is inferior to an appeal in that it does not reach errors in conclusions of fact from the evidence. *Nelson* v. *Bailey,* 303 Mass. 522, 22 N.E.2d 116.

Whether a decree is sought to be altered by either a petition for a rehearing or a bill of review, the sole grounds for changing the judicial action taken are either the discovery of new and material evidence not available at the hearing of the cause or the demonstration in the record of a manifest error of law of the court. Keigwin, *Cases in Equity Pleading,* §713. Even though it has been said that a bill of review will lie if a decree has been entered because of a mistake or fraud, such a pronouncement is not strictly speaking true and comes about from an imprecise use of language. The vehicle by which a decree can be re-

viewed on the alleged grounds of fraud or mistake is usually designated as a "bill in the nature of a bill of review."

Fraud in the procurement of a decree may not be the basis of a bill of review but recourse must be had to an original bill to impeach the decree for fraud. A bill of review is a continuance of the original litigation while a bill to impeach for fraud is new and independent litigation. *Dowagiac Mfg. Co.* v. *McSherry Mfg. Co.*, 155 F. 524 (6th Cir. 1907). While the court in *Vincent, supra,* said that a bill of review would be used where a consent decree had been entered by mistake, it relies, in part, on *Lester* v. *Matthews,* 58 Ga. 403, where the court said that the bill (in *Lester*) was in the "nature of a bill of review." A consent decree cannot be reheard or be reviewed upon a bill of review. 1 Whitehouse, *Equity Practice,* §406, pp. 648, 649.

A rehearing refers to a reconsideration of a case by the same court in which the original determination was made. *J. I. Case Co.* v. *McDonald,* 76 Idaho 223, 280 P.2d 1070. It may consist in the presentation of new facts or a more comprehensive consideration of the record already in the case as the movant seeks to show the alleged apparent error. See *Reed* v. *Patterson,* 44 N. J. Eq. 211, 14 A. 490.

We, therefore, hold that in a nonjury civil action where the trial judge decides both the law and the facts, he may grant a new trial only if he finds a manifest error of law in the judgment previously entered or if he is satisfied that the newly discovered evidence was not available at the first trial and is of sufficient importance to warrant a new trial.

In the case at bar, the defendant, although he had alleged in his motion for a new trial that he had obtained newly discovered evidence, failed to present any such evidence. There is absolutely no manifest error in the judgment. At most, the defendant's motion amounted to a rehash of the evidence adduced at the trial. This did not

entitle him to a new trial. The denial of his motion was correct.

The defendant's appeal is denied and dismissed.

*Edward D. Feldstein,* for plaintiff.

*Israel Moses,* for defendant.