[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Dr. John M. Monchick's (Defendant) motion for partial summary judgment. Intervenor Department of Human Services has filed a cross motion for summary judgment in its favor.
 FACTS AND TRAVEL
The underlying case is a medical malpractice action in which the Plaintiff alleges that the Defendants negligently rendered medical treatment to Plaintiff's decedent, which ultimately led to her death. The following material facts are undisputed. The Rhode Island Department of Human Services (DHS) provided medical assistance payments on behalf of the Plaintiff's decedent in the amount of $910,075.03.[1] Defendant Monchick asserted as an affirmative defense that the collateral source statute, G.L. 1956 § 9-19-34.1, applied in this case, thereby precluding Plaintiff's recovery of any damages paid for by the state. Defendant now moves this Court for partial summary judgment arguing that Plaintiff is not entitled to recover damages for medical expenses that have been paid for by a collateral source. Plaintiff objects to Defendant's motion and seeks to allow recovery of those expenses. On October 3, 2003, this Court granted DHS's motion to intervene in this matter. DHS asserts that it has a right to recover those payments from any damages awarded to the Plaintiff based on an assignment pursuant to G.L. 1956 § 40-6-9, and has filed a cross-motion for partial summary judgment.
 STANDARD OF REVIEW
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Assoc.,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c).
Section 9-19-34.1 of the Rhode Island General Laws, the collateral source statute, establishes a procedure concerning the admissibility of evidence of collateral source payments in medical malpractice actions. The statute only comes into play during trial "[i]n the event defendant so elects" to introduce evidence of payments to the plaintiff from enumerated collateral sources. When such evidence is introduced, "the jury shall be instructed to reduce the award for damages" based on the amount of collateral source payments received, less the amount paid or contributed by the plaintiff to secure his or her right to any such insurance benefits. § 9-19-34.1. It is only when "an award is so reduced [that] the lien of any first party payor . . . shall be foreclosed. . . ." Id. The effect of the statute, therefore, is that first party payors will only be precluded from enforcing their rights when there has been a jury verdict and the verdict has been reduced based on payments made by collateral sources.
The instant case concerns a matter of statutory construction as to whether Medicaid payments are included within the enumerated collateral sources set forth in the statute. If the statute does not apply to Medicaid payments, then Defendant would be foreclosed from introducing such evidence under the general common-law rule in effect in the absence of a statute that plaintiff's receipt of payments from sources independent of the defendant are not to be considered as a reduction of damages.See Colvin v. Goldenberg, 108 R.I. 198, 201, 273 A.2d 663, 666 (1971). In that instance, Plaintiff, and ultimately DHS, would not be prevented from recovering those sums.
Even if this Court were, as a matter of statutory construction, to find that Medicaid payments were included in the statute (and thus precluded from Plaintiff's recovery), the issue would only arise at trial if Defendant elected to introduce evidence of such payments, and the jury was instructed to reduce any award to the Plaintiff by the amount of such payments. Accordingly, these cross-motions for summary judgment, in essence, request a legal ruling on the construction of the statute and are requesting anin limine ruling on the admissibility of such evidence at trial. Since there are no disputed factual issues, this Court can rule on the legal issue of statutory construction at this time, and will also consider these motions for partial summary judgment as motions in limine relating to the admissibility of evidence of payments made to or on behalf of Plaintiff's decedent under the Medicaid Program.
 ANALYSIS
Introduction
Beginning in the mid-1970s, state legislatures responded to a perceived medical malpractice insurance crisis due to increases in the premium cost of malpractice insurance. James J. Watson, Annotation, Validity and Construction of State StatuteAbrogating Collateral Source Rule as to Medical MalpracticeActions, 74 A.L.R. 4th 32, 37 (1989). A common component of such legislation was a provision abrogating the common-law collateral source rule by allowing the admission in evidence of collateral source payments received by a plaintiff, or by deducting or excluding those payments from damage awards. Id. The Rhode Island General Assembly responded with 1986 R.I. Pub. Laws ch. 350, "An Act Relating to Medical Malpractice," with the following as its preamble:
 "WHEREAS, The number of medical and dental malpractice claims being made and the cost of settling such claims by the Medical Malpractice Joint Underwriting Association of Rhode Island, an agency of state government designed to provide a continuing stable institution for medical and dental malpractice liability insurance and the dominant such insurance carrier in this state, has continued to increase significantly; and
 WHEREAS, As a result, the Medical Malpractice Joint Underwriting Association has recently experienced an accelerated negative financial position resulting in a fund deficit as of December 31, 1985; and
 WHEREAS, Insolvency of said Association would have an adverse financial effect upon the citizens of Rhode Island who purchase liability insurance of any type as their premiums would increase in order to offset the deficit or, alternatively, such insolvency would adversely affect all the taxpayers of Rhode Island; and
 . . .
 WHEREAS, The General Assembly finds that a significant number of medical and dental malpractice claims have been filed against a relatively few health care providers; and
 . . .
 WHEREAS, the General Assembly acting within the scope of its police power finds the statutory remedy herein provided is intended to be an adequate and reasonable remedy now and into the foreseeable future." 1986 R.I. Pub. Laws ch. 350.
As part of this Act, the General Assembly enacted the collateral source statute, § 9-19-34.1, abolishing the common-law collateral source rule in medical malpractice actions with regard to specific types of collateral payments.[2] The statute provides in pertinent part:
 "In the event the defendant so elects, in a legal action based upon a cause of action arising after January 1, 1987, for [medical malpractice], the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to any state income disability or workers' compensation act, any health, sickness or income disability insurance, accident insurance that provides health benefits or income disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. . . . When such evidence is introduced, the jury shall be instructed to reduce the award for damages by a sum equal to the difference between the total benefits received and the total amount paid to secure the benefits by the plaintiff or the court may ascertain the sum by special interrogatory and reduce the award for damages after verdict. Whenever an award is so reduced, the lien of any first party payor who has paid such a benefit against the judgment shall be foreclosed and the plaintiff shall have no legal obligation to reimburse the payor." § 9-19-34.1.
The issue before the Court is whether this statute includes payments made to the Plaintiff's decedent under the Medicaid program. DHS further argues that, to the extent that Medicaid payments to a medical malpractice plaintiff are construed to be included in the statute (and therefore excluded from plaintiff's recovery as a collateral source), the statute would bar recovery by DHS, and therefore create a result preempted by federal law.
Collateral Source Statute
The collateral source rule is a common-law doctrine that "mandates that evidence of payments made to an injured party from sources independent of a tort-feasor are inadmissible and shall not diminish the tort-feasors' liability to the plaintiff."Gelsomino v. Mendonca, 723 A.2d 300, 301 (R.I. 1999). "The rationale of this rule is that the injured person is entitled to be made whole, since it is of no concern of the tort-feasor that someone else completely unconnected with the tort-feasor has aided his victim. . . ." Colvin v. Goldenberg, 108 R.I. at 202, 273 A.2d at 666. The wrongdoer, therefore, is not entitled to this windfall. Oddo v. Cardi, 100 R.I. 578, 584-85,218 A.2d 373, 377 (1966).
In response to the perceived medical malpractice insurance crisis discussed supra, the General Assembly has attempted to abrogate this common-law doctrine in the limited instance of medical malpractice actions through the enactment of § 9-19-34.1. However, statutes in derogation of the common law must be strictly construed. Hodge v. Osteopathic Gen. Hosp. of R.I.,107 R.I. 135, 144, 265 A.2d 733, 738-39 (1970). As to matters of statutory construction, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Providence Worcester Railroad Co. v. Pine,729 A.2d 202, 208 (R.I. 1999).
The collateral source statute at issue in this case is applicable to payments made pursuant to (1) any state income disability or workers' compensation act; (2) any health, sickness or income disability insurance; (3) accident insurance that provides health benefits or income disability coverage; and (4) any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. In order for the statute to apply in the instant case, Medicaid payments must fall within one of these enumerated categories. In making this determination, the General Assembly's language will be strictly construed.
Medicaid is neither a state workers' compensation act,[3]
nor is it a state income disability act. Although the statute does not define a "state income disability act," this Court must apply accepted tenets of statutory construction in making a determination of whether Medicaid payments fall within the parameters of payments made under an income disability act. "If it is expected that a particular term would be defined in the body of the statute, but is not, then the word will be assumed to have its ordinary and popularly understood meaning." SutherlandStat. Const. § 47:07 (6th ed. 2001). "[I]f the legislature uses a term which has no widely accepted common law meaning at the time of enactment, the term should be given a meaning consistent with the purpose of the enactment and its legislative history." Id. at § 47:28.
The statute in Rhode Island that clearly falls within the meaning of "income disability act" is the program for Temporary Disability Insurance provided for in G.L. 1956 § 28-39-1, et seq. The Medicaid program, on the other hand, is a much broader program designed to "provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance." G.L. 1956 § 40-8-1. Although some disabled persons may otherwise qualify for Medicaid payments, eligibility under Medicaid is governed by a much broader, need-based definition. The eligibility requirements under Medicaid are articulated in § 40-8-3, which provides medical care benefits to "low-income persons who are aged sixty-five or older, and to blind or disabled persons, and to members of families with dependent children." In Re Grand Jury Investigation,441 A.2d 525, 529 (1982). Medicaid does not provide medical assistance exclusively to the disabled. This Court is guided by the principle that statutes are to be construed according to their plain meaning unless such interpretation would defeat the intent of the legislature. Gilbane Co. v. Poulas, 576 A.2d 1195, 1196 (R.I. 1990). Applying such plain meaning, this Court would be hard pressed to construe the Medicaid program as an "income disability act." It is not a program designed to compensate for lost income to disabled persons otherwise unable to work; rather, it is a program designed to assist certain categories of individuals, including persons who may be disabled, in meeting their medical needs. This Court agrees with the Plaintiff and DHS that the statute simply cannot be read as including payments under an "income disability act" that "provides health benefits," since the latter phrase modifies "accident insurance" and not "income disability" payments. To combine the two statutory phrases to evidence a statutory intent to include Medicaid payments is a tortured reading not in keeping with this Court's obligation to strictly construe statutes in derogation of the common law.
Medicaid payments are also not payable as a form of health, sickness or income disability insurance. In order for Medicaid payments to fall within this statutorily defined category, such payments would have to be considered a form of insurance. The concept of "insurance" connotes a contract or agreement by which one party, the insurer, commits to do something of value for another party, the insured, upon the occurrence of some specified contingency. Black's Law Dictionary 802 (7th ed. 1999). Medicaid is not a form of contract or agreement. Medicaid is a statutory benefit provided to certain qualifying individuals. There exists no contract or agreement as between the state and recipients which forms the basis for such eligibility. Accordingly, as the court found in Brown v. Stewart,129 Cal.App.3d 331 (1982), Medicaid payments are not paid under any contract or agreement to provide for or reimburse the cost of medical services.[4] Id. at 340. Such an interpretation likewise precludes defining Medicaid as health, sickness or income disability insurance, or as accident insurance that provides health benefits.
The General Assembly, in originally passing this legislation in 1986, and again in 1997 when it redefined the categories of collateral payments to which the statute applied, could have been explicit in including Medicaid payments in the statute, and thus preclude plaintiffs, and ultimately DHS, from recouping these payments as damages in medical malpractice actions. Having failed to do so, this Court declines to reach such a conclusion in the absence of a clear mandate from the General Assembly. Courts have assumed that "when the legislature expresses things through a list, . . . what is not listed is excluded." Sutherland Stat.Const. § 47:23 (6th ed. 2001).
Preemption
As further support for the preceding statutory interpretation, if this Court were to construe Medicaid payments as included, and thereby preclude DHS from recouping its payments from the Plaintiff's recovery, the statute as so construed would be preempted by federal law. Plaintiff and DHS argue that to the extent the statute abrogates DHS's lien, it is invalid under the Supremacy Clause. Plaintiff and DHS reason that if the collateral source statute applies to Medicaid, it would jeopardize federal funding to the state program and violate the congressional mandate requiring states that administer the Medicaid program to seek reimbursement from responsible third parties.
In 1965, Congress established the Medicaid program to assist states with the cost of providing health care for the poor.Pharm. Research Mfrs. of America v. Meadows, 304 F.3d 1197, 1199 (11th Cir. 2002). "The Social Security Act authorizes federal grants to states for medical assistance to low-income persons who are aged sixty-five or older, and to blind or disabled persons, and to members of families with dependent children." In Re Grand Jury Investigation, 441 A.2d 525, 529 (R.I. 1982). While the federal government provides a percentage of a state's funds, "actual Medicaid relief is administered through state agencies pursuant to a Medicaid program that has been submitted to and approved by the U.S. Department of Health and Human Services. This cooperative venture between the federal and state governments is governed by the terms of Title XIX of the Social Security Act (SSA), §§ 1901-1935, codified at 42 U.S.C. § 1396-1396v," and each state operates its own Medicaid program through its own statutes. Pharm. Research Mfrs. of America,
304 F.3d at 1199-1200.
The federal statutory scheme requires a state plan for medical assistance to seek reimbursement from responsible third parties and provides:
 "(A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan, including
 (i) the collection of sufficient information . . . to enable the State to pursue claims against such third parties . . .
 . . .
 (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25).
"The purpose of this requirement is straightforward: when reasonably feasible, states are required to attempt to recover medical costs incurred under Medicaid programs from responsible third parties, rather than relying on federal aid exclusively."Barton v. Summers, 293 F.3d 944, 951-52 (6th Cir. 2002).
Rhode Island's statutory program, G.L. 1956 § 40-6-9, provides for an assignment in accordance with federal law:
 "(b) An applicant for or recipient of public assistance provided by the department pursuant to this chapter, chapter 5.1, or chapter 8 of this title or title XIX of the federal Social Security Act, 42 U.S.C. § 1396 et seq., for and on behalf of himself or herself, and for and on behalf of any other person for whom he or she may legally assign rights to any medical support or any other medical care, shall be deemed, without the necessity of signing any document, to have made an assignment to the department of human services of any and all rights and interests that he, she, or such other person may have (1) to payment for any medical support and (2) to payment for any medical care from any third party."
The issue in the instant case is whether § 9-19-34.1, if interpreted to include Medicaid payments and result in foreclosures of any liens or assigned rights of DHS, conflicts with these provisions and is preempted by the federal law. Preemption can exist in three forms: express preemption, implied field preemption, or implied conflict preemption. Gade v. Nat'lSolid Wastes Mgmt. Assoc., 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73, 84 (1992). Conflict preemption arises when "compliance with both federal and state regulations is a physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (internal quotation marks and citations omitted).
The Rhode Island Supreme Court has previously struck down a state statute that conflicted with the federal Medicaid statutes.In Re Grand Jury Investigation, 441 A.2d 525 (1982). In that case, Rhode Island's patient-physician privilege statute was in conflict with applicable federal law that required disclosure of a physician's records during an investigation of alleged Medicaid fraud. Id. at 526. The Court pointed out that if a state did not comply with an approved Medicaid plan, the Secretary of the Department of Health and Human Services may withhold payments to the state. Id. at 529. The Court noted that because of the "Legislature's overwhelming expression of intent to continue to receive aid for the needy citizens of this state under the federal Medicaid laws, we must give full priority to the federal law when it conflicts with our own patient-physician privilege."Id.
Likewise, in this case, if the statute were to be interpreted as including Medicaid benefits, with the result that the state would be precluded from recovering Medicaid payments from responsible third parties, the state would be unable to comply with the federal requirements. That result would conflict with the federal Medicaid statutes and result in the preemptive effect of federal law. See In Re Grand Jury Investigation, 441 A.2d at 531; see also Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131, 137 (1986) (noting participating states are obligated to comply with requirements of Social Security Act to receive federal funding).
Constitutionality
Plaintiff raises the issue of whether § 9-19-34.1 is violative of the equal protection and due process clauses of the United States Constitution. See Plaintiff's Memorandum in Support ofObjection to Motion for Summary Judgment, at 17-19. However, this Court is mindful of the admonition that it not resolve a constitutional issue unless and until the "necessity for such a decision is clear and imperative." Devane v. Devane,581 A.2d 264, 265 (R.I. 1990); see also O'Connell v. Bruce,710 A.2d 674 (R.I. 1998) (refusing to rule on constitutionality of curative legislation). In light of the Court's finding that Medicaid payments fall outside of the collateral source definitions contained in § 9-19-34.1, the Court need not reach the constitutional issues raised by the Plaintiff.
 CONCLUSION
For the above stated reasons, the Defendant Monchick's motion for partial summary judgment is denied, and the said Defendant's first affirmative defense is deemed stricken. Similarly, the Intervenor Rhode Island Department of Human Services' cross-motion for partial summary judgment is granted, and the Court hereby determines in limine that Monchick is precluded from invoking the provisions of § 9-19-34.1 in connection with any payments made to or on behalf of Plaintiff's decedent under Title 40, Chapter 8 of the Rhode Island General Laws entitled "Medical Assistance."
[1] The Medical Assistance program is set forth in Title XIX of the United States Social Security Act, entitled "Grants to States for Medical Assistance Programs." The state of Rhode Island participates in the federal Medical Assistance program under Title 40, Chapter 8 of the Rhode Island General Laws, entitled "Medical Assistance." Both state and federal acts are commonly referred to as Medicaid and for ease of reference, will be referred to as the Medicaid program.
[2] The collateral source statute originally enacted as §9-19-34 was repealed by P.L. 1997, ch. 326, § 101, effective July 8, 1997. The former rule included "any amount payable as a benefit to the plaintiff pursuant to the United States social security act, any state or federal income disability or workers compensation act. . . ." The rule in effect now contains no reference to payments under the Social Security Act, federal income disability or workers compensation act.
[3] Rhode Island's workers' compensation act is found in G.L. 1956 § 28-29-1, et seq., which provides assistance to injured employees for medical expenses and lost wages.
[4] The California statute interpreted in the Brown case applied to payments made "as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act. . . ." Cal. Civ. Code § 3333.1. As noted supra, the Rhode Island General Assembly repealed those portions of the statute referring to the Social Security Act and any federal acts, but the Rhode Island statute is otherwise identical to the California statute concerning the applicable categories of collateral source payments.