[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are Defendants' motions for judgment as a matter of law[1] and Plaintiff's cross-motion for entry of judgment in her favor. Defendants contend that the collateral source statute, G.L. 1956 § 9-19-34.1, applies in this case and precludes Plaintiff from recovering any medical care payments made on behalf of Plaintiff's decedent by the State of Rhode Island through Medicaid.[2] Plaintiff contends that the statute does not apply, rendering those payments recoverable as damages.
 FACTS AND TRAVEL
The underlying cause of action in this case concerns a medical malpractice action. Plaintiff alleges that the Defendants were negligent in failing to diagnose Plaintiff's decedent with Hodgkins lymphoma, which ultimately led to death.
On September 21, 2003, the parties settled the case, agreeing to dismiss all claims, with the exception of a single claim involving Atmed and the Medical Malpractice Joint Underwriting Association (MMJUA). Regarding this claim, the parties stipulated that the State of Rhode Island paid $381,659.26 to medical care providers for the care and treatment of Plaintiff's decedent. The parties stipulated that the underlying tort issues are not in dispute and the only issue before this Court is whether the collateral source statute applies. Transcript of Settlement Agreement Hearing, September 21, 2003, at 2. Defendants preserved their claim that, in accordance with G.L. 1956 § 9-19-34.1, Plaintiff may not recover as damages these medical expenses paid for by collateral sources. Plaintiff reserved her claim that she can recover these damages because § 9-19-34.1 either: (1) does not apply to these payments; or (2) is preempted by federal law; or (3) is otherwise unconstitutional. The parties declared their intent that the Court determine the legal question of whether §9-19-34.1 applies to Medicaid payments, is preempted by federal law, or is unconstitutional.
At the settlement agreement hearing, the parties stipulated that this Court would retain jurisdiction over the matter and, upon the submission of legal memoranda, would render a decision with respect to whether Plaintiff is entitled to collect those sums. Defendants Atmed, Hani M. Zaki, M.D., Inc. and MMJUA submitted memoranda seeking judgment in their favor contending that § 9-19-34.1 precludes Plaintiff's recovery of medical expenses paid by Medicaid. Plaintiff and DHS[3] assert that the collateral source statue does not apply to Medicaid and, accordingly, seek entry of judgment in the amount of $381,659.26, plus pre-judgment interest.
 STANDARD OF REVIEW
The parties have settled all issues, but leave to this Court's determination whether § 9-19-34.1 applies to Medicaid payments and which party is entitled to judgment concerning those damages. Stipulating that there are no issues of fact, the parties are requesting this Court for judgments as a matter of law. Accordingly, this Court will treat their requests as motions for summary judgment. Wright, Miller Kane, Federal Practice andProcedure: Civil 3d § 2720 (court may enter summary judgment without a motion if the party against whom judgment will be entered was given an adequate opportunity to demonstrate why summary judgment should not be granted). In a summary judgment proceeding, the moving party must demonstrate that he or she is entitled to judgment as a matter of law and that no genuine issues of material fact exist. Palmisciano v. BurrillvilleRacing Ass'n, 603 A.2d 317, 320 (R.I. 1992); Super. R. Civ. P. Rule 56(c). The parties in this matter have stipulated that there is no factual dispute, which leaves only a legal issue as to the applicability of the collateral source statute.
 The Collateral Source Statute
Beginning in the mid-1970's, state legislatures responded to a perceived medical malpractice insurance crisis due to increases in the premium cost of malpractice insurance. James J. Watson, Annotation, Validity and Construction of State StatuteAbrogating Collateral Source Rule as to Medical MalpracticeActions, 74 A.L.R. 4th 32, 37 (1989). A common component of legislative packages was a provision abrogating the common-law collateral source rule by admitting in evidence collateral source payments received by the plaintiff or by deducting or excluding those payments from damage awards. Id. The Rhode Island General Assembly responded to this situation by enacting 1986 R.I. Pub. Laws ch. 350, "An Act Relating to Medical Malpractice," with the following as its preamble:
 "WHEREAS, The number of medical and dental malpractice claims being made and the cost of settling such claims by the Medical Malpractice Joint Underwriting Association of Rhode Island, an agency of state government designed to provide a continuing stable institution for medical and dental malpractice liability insurance and the dominant such insurance carrier in this state, has continued to increase significantly; and
 WHEREAS, As a result, the Medical Malpractice Joint Underwriting Association has recently experienced an accelerated negative financial position resulting in a fund deficit as of December 31, 1985; and
 WHEREAS, Insolvency of said Association would have an adverse financial effect upon the citizens of Rhode Island who purchase liability insurance of any type as their premiums would increase in order to offset the deficit or, alternatively, such insolvency would adversely affect all the taxpayers of Rhode Island; and
 . . .
 WHEREAS, The General Assembly finds that a significant number of medical and dental malpractice claims have been filed against a relatively few health care providers; and
 . . .
 WHEREAS, the General Assembly acting within the scope of its police power finds the statutory remedy herein provided is intended to be an adequate and reasonable remedy now and into the foreseeable future." 1986 R.I. Pub. Laws ch. 350.
As part of this act, the General Assembly enacted the collateral source statute, § 9-19-34.1, abolishing the common-law collateral source rule in medical malpractice actions.[4]
The statute provides in pertinent part:
 "In the event the defendant so elects, in a legal action based upon a cause of action arising after January 1, 1987, for [medical malpractice], the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to any state income disability or workers' compensation act, any health, sickness or income disability insurance, accident insurance that provides health benefits or income disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. . . . When such evidence is introduced, the jury shall be instructed to reduce the award for damages by a sum equal to the difference between the total benefits received and the total amount paid to secure the benefits by the plaintiff or the court may ascertain the sum by special interrogatory and reduce the award for damages after verdict. Whenever an award is so reduced, the lien of any first party payor who has paid such a benefit against the judgment shall be foreclosed and the plaintiff shall have no legal obligation to reimburse the payor." G.L. 1956 § 9-19-34.1.
It is this statute that the parties are challenging, specifically whether it applies to Medicaid payments or is pre-empted by federal law.
Defendant Atmed argues that Medicaid is included within the statute because the state benefits received by the Plaintiff are part of a state income disability act that provides health benefits. Atmed further contends that DHS has no greater rights than Plaintiff because the rights are derived from an assignment, not a lien; therefore, because Plaintiff has no right to recovery under § 9-19-34.1, neither does DHS.
Plaintiff argues that Medicaid does not fall within the statute because it is not a state income disability act. She contends that Title 40, chapter 8 does not provide disability income payments; rather those payments are provided for in G.L. §28-39-1, et seq. Plaintiff believes the Court should interpret "state income disability act" as Temporary Disability Insurance (TDI) in accordance with its ordinary meaning. Plaintiff further argues that Medicaid is neither "health, sickness or income disability insurance," nor is it "accident insurance that provides health benefits or income disability coverage" because Medicaid does not provide insurance. Statutory Public Assistance benefits paid by the state are not paid pursuant to a contract of a group, organization, partnership or corporation, thereby precluding it from operation of the statute. Plaintiff argues that Defendant misinterpreted the statute as referring to "state income disability act that provides health benefits" because "provides health benefits" actually refers to "accident insurance."
The collateral source rule is a common-law doctrine that "mandates that evidence of payments made to an injured party from sources independent of a tort-feasor are inadmissible and shall not diminish the tort-feasors' liability to the plaintiff."Gelsomino v. Mendonca, 723 A.2d 300, 301 (R.I. 1999). "The rationale of this rule is that the injured person is entitled to be made whole, since it is of no concern of the tort-feasor that someone else completely unconnected with the tort-feasor has aided his victim. . . ." Colvin v. Goldenberg, 108 R.I. 198, 202, 273 A.2d 663, 666 (1971). The wrongdoer, therefore, is not entitled to this windfall. Oddo v. Cardi, 100 R.I. 578, 584-85,218 A.2d 373, 377 (1966).
In response to the perceived medical malpractice insurance crisis discussed supra, the General Assembly abrogated this common-law doctrine in medical malpractice actions through the enactment of § 9-19-34.1. However, statutes in derogation of the common law must be strictly construed when interpreting the General Assembly's language. Kelly v. Marcantonio,678 A.2d 873, 833 (R.I. 1996). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Providence Worcester Railroad Co. v. Pine,729 A.2d 202, 208 (R.I. 1999).
Defendants Hani M. Zaki, M.D., Inc. and MMJUA argue that, although the collateral source statute is in derogation of the common law, it should be liberally construed because it is a remedial statute. Defendants contend that the statute's remedial purpose was to shift the risk of medical expenses in medical malpractice actions from liability insurers to providers of collateral sources. While it is true that remedial statutes in derogation of the common law should be given a liberal construction, see Ayers-Schaffner v. Solomon, 461 A.2d 396, 399 (R.I. 1983), the collateral source statute is not remedial in nature. A remedial statute is "one which affords a remedy, or improves or facilitates remedies already existing for the enforcement of rights or redress of wrongs." Ayers-Schaffner,
461 A.2d at 399. The collateral source statute is clearly not remedial because it does not afford or improve remedies for medical malpractice plaintiffs; rather, it limits the remedies available to those plaintiffs. Prior to the enactment of the collateral source statute, defendants were precluded from introducing evidence of collateral source payments. The effect of the statute, however, precludes plaintiffs from recovering those otherwise recoverable sums. Accordingly, the statute is not remedial in nature and cannot be liberally construed.
The collateral source statute applies to payments made pursuant to (1) any state income disability or workers' compensation act; (2) any health, sickness or income disability insurance; (3) accident insurance that provides health benefits or income disability coverage; and (4) any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. In order for the statute to apply in the instant case, Medicaid must fall within one of these enumerated categories. In making this determination, the General Assembly's language will be strictly construed.
Medicaid is neither a state workers' compensation act,[5]
nor is it a state income disability act. As the statute does not define a state income disability act, this Court employs the principles of statutory construction in determining whether Medicaid may be considered an income disability act. "If it is expected that a particular term would be defined in the body of the statute, but is not, then the word will be assumed to have its ordinary and popularly understood meaning." Sutherland Stat.Const. § 47:07 (6th ed.). "[I]f the legislature uses a term which has no widely accepted common law meaning at the time of enactment, the term should be given a meaning consistent with the purpose of the enactment and its legislative history." Id. at § 47:28; see also State v. Burke, 811 A.2d 1158, 1167 (R.I. 2002) (when interpreting a legislative enactment, the court must attribute to the enactment a meaning most consistent with the Legislature's policies or obvious purposes).
This Court notes a recent Superior Court decision, wherein the court held that the program for Temporary Disability Insurance, G.L. 1956 § 28-39-1, et seq., is the statute that clearly falls within the meaning of income disability act. Kem v. Monchick,
C.A. 1999-4646, January 7, 2004, Rubine, J. In Kem, the court noted that "[a]lthough some disabled persons may otherwise qualify for Medicaid payments, eligibility under Medicaid is governed by a much broader, need-based definition." Id. at p. 7. Eligible Medicaid recipients include low-income persons who are aged sixty-five or older, blind or disabled persons, and members of families with dependent children. In Re Grand JuryInvestigation, 441 A.2d 525, 529 (1982). Medicaid cannot be considered an income disability act because its eligibility requirements extend beyond those who are disabled. In Kem, the court noted that Medicaid "is not a program designed to compensate for lost income to disabled persons otherwise unable to work; rather, it is a program designed to assist certain categories of individuals, including persons who may be disabled, in meeting their medical needs." Kem at p. 8. As did the court in Kem, this Court similarly finds that Medicaid is not an income disability act.
Defendant contends that the statute applies to payments made pursuant to an "income disability act" that "provides health benefits." However, the latter phrase modifies "accident insurance" and not "income disability" payments. As the court inKem noted, "[t]o combine the two statutory phrases to evidence a statutory intent to include Medicaid payments is a tortured reading not in keeping with this Court's obligation to strictly construe statutes in derogation of the common law." Id.
Medicaid payments are also not considered a form of health, sickness or income disability insurance. "[S]uch payments would have to be considered a form of insurance" in order for Medicaid to fall within this category. Id. "Insurance" is defined as a contract or agreement by which one party, the insurer, commits to do something of value for another party, the insured, upon the occurrence of some specified contingency. Black's Law Dictionary 802 (7th ed. 1999). Medicaid is not a form of contract or agreement; it is a statutory benefit provided to certain qualifying individuals. As the court in Kem observed, "[t]here exists no contract or agreement as between the state and recipients which forms the basis for such eligibility." Kem at p. 8. A California court found that Medicaid payments are not paid under any contract or agreement to provide for or reimburse the cost of medical services.[6] Brown v. Stewart,129 Cal.App.3d 331 (1982). Accordingly, Medicaid cannot be interpreted as health, sickness or income disability insurance, or as accident insurance that provides health benefits.
Defendant additionally argues that a proposed amendment to exclude Medicaid from the statute implies that Medicaid is already included. Earlier this year, an Act was introduced in the General Assembly to exclude medical assistance benefits from the statute, which Atmed suggests implies that the General Assembly believes Medicaid to be included in the statute; otherwise the proposed amendment would not be necessary.[7] The Court finds defendant's argument unpersuasive. The proposed amendment does not necessarily imply that the General Assembly intended to include Medicaid within the operation of § 9-19-34.1; it only highlights the fact that there is confusion surrounding the applicability of the statute. In drafting § 9-19-34.1 and its predecessor, the General Assembly could have explicitly included Medicaid payments in the statute, thereby precluding Plaintiff and DHS from recouping those payments. Courts have assumed that "when the legislature expresses things through a list, . . . what is not listed is excluded." Sutherland Stat. Const. § 47:23 (6th Ed.). Accordingly, this Court finds that Medicaid is not included within the statute and, therefore, evidence of those collateral source payments is not admissible in a medical malpractice action.
 Preemption and Constitutionality
Having found that Medicaid is not included within the statute, the Court need not address the preemption and constitutional issues. Furthermore, in declining to rule on the constitutionality of the subject statute, the Court notes that it is "imperative that a trial justice, in the exercise of his or her judicial authority, not resolve a constitutional issue unless and until . . . necessity for such a decision is clear and imperative." Devane v. Devane, 581 A.2d 264, 265 (R.I. 1990);see also O'Connell v. Bruce, 710 A.2d 674 (R.I. 1998) (refusing to rule on constitutionality of curative legislation because initial resolution valid).
 CONCLUSION
This Court finds that Medicaid payments do not fall within the collateral source statute and are therefore inadmissible in a medical malpractice action. The parties have, with the exception of whether the Plaintiff is entitled to recover the damages paid by Medicaid, settled every issue in this case. This Court finds that § 9-19-34.1 does not preclude Plaintiff from recovering those sums. Accordingly, judgment shall enter in favor of Plaintiff in the amount of $381,659.26 plus pre-judgment interest.
[1] The Defendants bringing the instant action are Atmed Treatment Center, Inc., Hani M. Zaki, M.D., Inc., and the Medical Malpractice Joint Underwriting Association of Rhode Island (MMJUA). All claims involving the remaining Defendants have been settled.
[2] The Medical Assistance program is set forth in Title XIX of the United States Social Security Act, entitled "Grants to States for Medical Assistance Programs." The State of Rhode Island participates in the federal Medical Assistance program under Title 40, Chapter 8 of the Rhode Island General Laws, entitled "Medical Assistance." Both state and federal acts are commonly referred to as Medicaid and for ease of reference, will be referred to as the Medicaid program.
[3] On October 2, 2003, DHS's motion to intervene in this matter was granted.
[4] The collateral source statute originally enacted as §9-19-34 was repealed by P.L. 1997, ch. 326, § 101, effective July 8, 1997. The former rule included "any amount payable as a benefit to the plaintiff pursuant to the United States social security act, any state or federal income disability or workers compensation act. . . ." The rule in effect now contains no reference to payments under the Social Security Act, federal income disability or workers compensation act.
[5] Rhode Island's Workers' Compensation Act is found in G.L. 1956 § 28-29-1, et seq., which provides assistance to injured employees for medical expenses and lost wages.
[6] The California statute interpreted in the Brown case applied to payments made "as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act. . . ." Cal. Civ. Code § 3333.1. As noted supra, the Rhode Island General Assembly repealed those portions of the statute referring to the Social Security Act and any federal acts, but the Rhode Island statute is otherwise identical to the California statute concerning the applicable categories of collateral source payments.
[7] On February 2003, an act was introduced in the General Assembly to amend the collateral source statute. The amendment would exclude state funded benefits, defined as medical assistance benefits financed in whole or in part by the state pursuant to chapters 40-5.1, 40-6, 40-8 and/or 40-8.4 of the general laws.