[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are the Department of Human Services' (DHS) motions to intervene and set aside judgment pursuant to Super. R. Civ. P. 24(a) and 60, respectively. DHS made medical assistance payments on behalf of the minor Plaintiff in excess of $700,000. DHS avers that it is entitled to reimbursement from the Plaintiff by virtue of the assignment statute, R.I. Gen. Laws 1956 §40-6-9. The original parties have settled, and Plaintiff asserts that DHS is not entitled to reimbursement because R.I. Gen. Laws 1956 § 9-19-34.1, the collateral source statute, prevents DHS from recovering after there has been a settlement.
 FACTS AND TRAVEL
The underlying action in this case involves a medical malpractice case in which minor Plaintiff Cross B. Toti's medical bills, in excess of $703,107.97, were paid by the state through Medicaid.[1] DHS received notice of Plaintiff's representation, although not notice of a pending lawsuit, and sent a letter to Plaintiff's attorney on September 30, 2002, stating "when you plan a settlement in this case, please forward a check" to DHS. The case was settled on November 27, 2002, and this Court signed an order approving such settlement. This Court also signed an order regarding the applicability of the collateral source statute, R.I. Gen. Laws 1956 § 9-19-34.1. This Court found that the statute "applies to this matter, and therefore the provision concerning foreclosure of liens of any first party payor is applicable as well."
On May 14, 2003, Plaintiff's attorney officially notified DHS of the settlement and the order purportedly extinguishing DHS's rights. On May 15, 2003, DHS sent another letter to Plaintiff's attorney requesting a check for reimbursement upon settlement. DHS then filed the instant motions for intervention and to set aside judgment. Plaintiff objects to the motions. A hearing on the issue was held on August 1, 2003.
 MOTION TO INTERVENE
Rule 24(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that: "[u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Timeliness of intervention is to be judged by two criteria: (1) the length of time during which the proposed intervenor has known about his interest in the suit without acting and (2) the harm or prejudice that results to the rights of other parties by delay. The Marteg Corp. v. Zoning Bd.of Review of Warwick, 425 A.2d 1240, 1243 (1981). One seeking to intervene after judgment has a very high burden. Id.
The 7th Circuit Court of Appeals has held that a party may intervene after a settlement has occurred:
 "Settlement is not conclusive if a third party possessing an interest in the property or transaction which is the subject of the action has been excluded from the negotiations. Intervention permits such an entity to prevent the original litigants from bargaining away its interests. If they beat the intervenor to the punch, the court may annul the settlement in order to give all interested persons adequate opportunity to participate in the negotiations and proceedings." Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc., 24 F.3d 958, 960 (7th Cir. 1994).
DHS argues that it did not intervene sooner because it did not have notice of the suit until the May 14 letter from Plaintiff's attorney. DHS claims that it only had notice of the fact that Plaintiff had representation, not that a suit had been filed as most cases are settled before suit is filed. Plaintiff did not produce any evidence that DHS was informed that a suit had been filed on behalf of Cross B. Toti. DHS moved to intervene as soon as it learned of the settlement.
Plaintiff argues that DHS should not be allowed to intervene because Plaintiff was not required to give notice. However, the assignment statute provides that "an applicant or recipient shall provide to [DHS] all relevant information regarding the rights assigned." R.I. Gen. Laws § 40-6-9 (d). 42 U.S.C. § 1396a (a)(45) also provides that a state plan for medical assistance must "provide for mandatory assignment of rights of payment for medical support and other medical care owed to recipients." As a condition of eligibility, an individual is required to cooperate with the state in identifying, and providing information to assist the state in pursuing any third party who may be liable to pay for care and services available under the plan.42 U.S.C. § 1396k. The Plaintiff, therefore, was required to give DHS notice as to any lawsuit or settlement. Accordingly, DHS will not be precluded from intervening in this matter.
 MOTION TO SET ASIDE JUDGMENT
Rule 60(b) of the Rhode Island Superior Court Rules of Civil Procedure provides, in pertinent part, that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . [or] (6) any other reason justifying relief from the operation of the judgment." "The provisions of [Rule 60(b)(6)] are available only in unique circumstances to prevent manifest injustice." Vitale v. Elliott, 120 R.I. 328, 332, 387 A.2d 1379, 1382 (1978). This catch-all provision "should not be applied unless there has been a showing by appropriate evidence of circumstances that would establish a uniqueness that puts the case outside of the normal and usual circumstances accompanying failures to comply with the rules." Greco v. SafecoIns. Co., 107 R.I. 195, 198, 266 A.2d 50, 52 (1970).
At the August 1, 2003, hearing, Plaintiff argued that DHS should not be entitled to set aside judgment because there is no judgment to set aside. However, Super. R. Civ. P. 60(b) clearly states that a court may relieve a party from an order; therefore, the rule is not limited to judgments. DHS will be entitled to set aside the order if it meets one of the two criteria set forth above.
DHS alleges that the Plaintiff engaged in misconduct by willfully ignoring DHS in this action. Although Plaintiff is required to notify DHS of any pending action, as discussedsupra, DHS presents no evidence that Plaintiff fraudulently or willfully excluded DHS from the proceedings. Therefore, DHS is not entitled to set aside judgment under Rule 60(b)(3).
DHS argues that it has an interest in this action and is entitled to set aside judgment because Rhode Island General Laws § 40-6-9 provides DHS with an assignment to any rights the aid recipient may have against third parties. In this case, DHS has an assignment of approximately $700,000, but this lien is foreclosed if the order is allowed to stand If the collateral source statute, R.I. Gen. Laws § 9-19-34.1, is not applicable in this case, but the order still stands, Plaintiff will essentially receive a windfall and DHS will not be able to recover the payments made on the minor Plaintiff's behalf. It would be grossly unjust if Plaintiff is allowed to keep approximately $700,000 when DHS should be entitled to the money. Therefore, the motion to set aside judgment should be granted pursuant to Rule 60(b)(6) if the collateral source statute does not apply in this case specifically, or to DHS and Medicaid payments generally.
 THE COLLATERAL SOURCE RULE
The collateral source rule is a common-law doctrine that "mandates that evidence of payments made to an injured party from sources independent of a tort-feasor are inadmissible and shall not diminish the tort-feasors' liability to the plaintiff."Gelsomino v. Mendonca, 723 A.2d 300, 301 (R.I. 1999). "The rationale of this rule is that the injured person is entitled to be made whole, since it is of no concern of the tort-feasor that someone else completely unconnected with the tort-feasor has aided his victim. . . ." Colvin v. Goldenberg, 108 R.I. 198, 202, 273 A.2d 663, 666 (1971). The wrongdoer, therefore, is not entitled to this windfall. Oddo v. Cardi, 100 R.I. 578, 584-85,218 A.2d 373, 377 (1966).
In response to a medical malpractice insurance crisis, the General Assembly abrogated this common-law doctrine through the enactment of § 9-19-34.1. However, statutes in derogation of the common law must be strictly construed when interpreting the General Assembly's language. Kelly v. Marcantonio,678 A.2d 873, 833 (R.I. 1996). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Providence Worcester Railroad Co. v. Pine,729 A.2d 202, 208 (R.I. 1999).
The statute provides in pertinent part:
 "In the event the defendant so elects, in a legal action based upon a cause of action arising after January 1, 1987, for [medical malpractice], the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to any state income disability or workers' compensation act, any health, sickness or income disability insurance, accident insurance that provides health benefits or income disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. . . . When such evidence is introduced, the jury shall be instructed to reduce the award for damages by a sum equal to the difference between the total benefits received and the total amount paid to secure the benefits by the plaintiff or the court may ascertain the sum by special interrogatory and reduce the award for damages after verdict. Whenever an award is so reduced, the lien of any first party payor who has paid such a benefit against the judgment shall be foreclosed and the plaintiff shall have no legal obligation to reimburse the payor." § 9-19-34.1.
The collateral source statute is a rule of evidence concerning the admissibility of collateral source payments in medical malpractice actions. The statute only comes into play during trial "[i]n the event defendant so elects," and, when evidence of collateral source payments is introduced, "the jury shall be instructed to reduce the award for damages" based on the amount of collateral source payments received. § 9-19-34.1. It is only when "an award is so reduced [that] the lien of any first party payor . . . shall be foreclosed. . . ." Id. The effect of the statute, therefore, is that first party payors will be precluded from enforcing their rights only when there has been a jury verdict and the verdict has been reduced based on payments made by collateral sources.
"When construing a statute, `this Court has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning.'" Nassa v. Hook-SupeRx, Inc., 790 A.2d 368, 370 (R.I. 2002) (quoting Matter of Falstaff Brewing Corp. Re:Narragansett Brewery Fire, 637 A.2d 1047, 1049 (R.I. 1994)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Accent Store Design, Inc. v. Marathon House, Inc.,674 A.2d 1223, 1226 (R.I. 1996). With respect to the meaning of words, "[t]he dictionary is an acceptable source for determining the meaning" of terms contained in a statute. Sutherland Stat.Const. § 47:07. A verdict is defined as "a jury's finding or decision on the factual issues of a case." Black's Law Dictionary 1554 (7th ed. 1999). The collateral source statute applies when the jury reduces the award for damages based on the collateral source payments or by the court after the verdict. The instant case involves a settlement, which is defined as "an agreement ending a dispute or lawsuit." Id. at 1377. A settlement essentially takes the case away from the jury; therefore, it cannot be interpreted as a verdict. According to the plain language of the statute, § 9-19-34.1 clearly applies only when there has been a jury verdict.
Also when interpreting a statute, "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions."Sutherland Stat. Const. § 47.23 (6th Ed.). In the instant case, the collateral source statute sets forth a procedure in reducing a jury verdict after the introduction in evidence of collateral source payments. There is no such procedure set forth when applied in the context of a settlement. Accordingly, the omission of such a procedure will be understood as an exclusion from the statute; therefore, § 9-19-34.1 does not apply in the context of a settlement.
There has not been a jury verdict in this case; therefore, the Plaintiff cannot assert the benefit of the statute. The statute further does not apply because there has been no reduction in the amount awarded to the Plaintiff based on the Medicaid payments. Plaintiff has represented that an amount has been put in escrow pending this decision. There is no evidence, therefore, to indicate that the settlement amount has been reduced based on the collateral source payments. Plaintiff failed to notify DHS about the settlement until after it had taken place and an order purportedly extinguished DHS's rights. As discussed supra, both state and federal law require a Medicaid recipient to provide the state with information to assist DHS in pursuing liable third parties. Accordingly, DHS is entitled to set aside judgment pursuant to Rule 60(b)(6) and recover the Medicaid payments pursuant to § 40-6-9.
 CONCLUSION
For the foregoing reasons, this Court grants DHS's motions to intervene and set aside judgment pursuant to Rules 24(a) and 60(b)(6), respectively. Counsel shall submit the appropriate judgments for entry.
[1] The Medical Assistance program is set forth in Title XIX of the United States Social Security Act, entitled "Grants to States for Medical Assistance Programs." The state of Rhode Island participates in the federal Medical Assistance program under Title 40, Chapter 8 of the Rhode Island General Laws, entitled "Medical Assistance." Both state and federal acts are commonly referred to as Medicaid and for ease of reference, will be referred to as the Medicaid program.